## CORTLAND COUNTY COURT.

### In the Matter of ADDIE MERICLO and LIBBIE MERICLO, infants.

*Illegitimate children — their right to inherit.*

In this state an illegitimate child cannot receive, by descent, the real estate of the ancestor of her deceased mother.

The statutes and decisions of other states compared and distinguished.

*February*, 1882.

*Hon. Charles Holmes*, for Addie Mericlo.

*Wm. J. Mantanyo*, for Libbie Mericlo.

A. P. SMITH, *Co. Judge.* — On the 12th day of November, 1870, Michael Mericlo died intestate at Marathon, in this county,

leaving two pieces of real estate. He left a widow, Elizabeth Mericlo, still living, and two grandchildren, one Addie Mericlo, a legitimate daughter of a deceased son, and one Libbie, an illegitimate daughter of a deceased daughter. Proceedings were taken in Cortland county court to sell one of the pieces of real estate as infants' real estate, and it was sold for $280 December 8, 1879. Deducting the widow's dower and attorney's fees, there were left $212.40 for the heir or heirs. By the final order it was directed : " that she " (the special guardian) " take to herself as special guardian for Addie Mericlo and Libbie Mericlo, a mortgage on said premises and the bond of the purchaser to secure the balance unpaid and annual interest December 1, 1882, and use the interest and so much of the principal as may be necessary for clothing and support and maintenance of said infants." This is a motion to correct that order by striking out the provisions as to Libbie and directing that it be paid to Addie alone, or to her committee. And the important question is whether Libbie is, under the circumstances of this case, an heir-at-law of Michael Mericlo. On the part of the committee of Addie, who makes the motion, it is insisted that Libbie is not an heir, while on Libbie's part it is claimed she is.

The amount involved in this case is considered by both counsel as insignificant. In fact, the widow, who is the special guardian, swears that it has all been used up since the making of the order in the support of these two children, and any court would be disposed to protect the old lady in her obedience in good faith of an unrevoked and unmodified order of a court of record. And if the parties interested are inspired by a proper spirit they will be disposed to acquiesce in any action of the court to that end. But there yet remains real estate unsold of the value of $2,500 to $3,000, and it is important to know whether it belongs to these two grandchildren jointly or to Addie alone, to the exclusion of Libbie. And this fact demands a careful consideration of the legal questions involved. It is purely a legal question, and does

not permit the indulgence of sympathy for either party, how-muchsoever the courts may personally sympathize. I have hoped to find some law or principle justifying a holding that Libbie is entitled to half this property. Her grandfather, doubtless, so desired and intended, and it is with the greatest reluctance that I have come to a conclusion that she is not his heir. I have examined every authority cited and many more, and compared the statutes of Vermont, Massachusetts, Connecticut and Virginia, under which they were made, with our own statutes, and have become strengthened in my first conclusions, with regret. By our statutes (2 *R. S.* [*6th ed.*], 1135, *sec.* 19) it is provided: " Sec. 19. Children *and relatives* who are illegitimate shall not be entitled to inherit under any of the provisions of this chapter."

The next section provides for the only exception to the above, and is the whole of chapter 547 of the Laws of 1855, entitled "An act allowing illegitimate children to inherit real and personal property in certain cases."

" SECTION 1. Illegitimate children, in default of lawful issue, may inherit real and personal property *from their mother*, as if legitimate ; but nothing in this act shall affect any right or title in or to any real or personal property already vested in the lawful heirs of any person heretofore deceased." This act was passed April 18, 1855, and I can find but one decision based upon it, and that was made by the surrogate of New York in June of that year, and merely holds the statute to be prospective and not retroactive (*Ferrie* agt. *The Pub. Admr.,* 3 *Bradf.,* 249).

In *Miller* agt. *Miller* (18 *Hun,* 507) the general term, in the third department, held that an " illegitimate " child, as used in this statute of descents, is one begotten and born out of wedlock, and the term is to receive its common-law signification.

In this case, had the mother of this illegitimate child survived her father, so as to become the owner of a vested estate, there would have been no difficulty. In that case,

Libbie being her only child, would have inherited the real and personal *from* her mother, within the provisions of the law of 1855. If the statutes of our state provided, as in Vermont, that "bastards shall also be capable of inheriting and transmitting inheritance on the part of the mother, as if legally begotten of said mother," we could have held, as the court did in *Town of Burlington* agt. *Frosby* (6 *Vt.*, 83), that one bastard could inherit from another bastard child of the same mother; or that an illegitimate child of a deceased daughter could inherit from the mother's father. The same remarks may be made with reference to the laws of Connecticut and Virginia, where it is held that illegitimates inherit *through* their mother, and similar provisions. But none of the decisions in those states aid us in the interpretation of our statute, for none of those states have the sweeping prohibition contained in section 19 (*supra*.) And in Connecticut and some other states it is held that they never even adopted the common law of England upon the subject. In *Heath* agt. *White* (5 *Conn.*, 228) the court says: "It must be admitted that all rules of succession in estates are creatures of civil polity and *juris positivi* merely (2 *Black. Com.*, 211)." * * * "The laws of the neighboring states, which limit descents to 'the lawful issue' of the intestate, have no bearing on the subject of discussion. It is a conclusive answer to argument from this source, that our law does *not* restrain succession to the *lawful issue*." * * * "I cannot admit any influence on my opinion from the common law of England, which has never been adopted here."

But the above remarks do not apply to the case under discussion, for in this state we have, in our constitution, expressly adopted the common law of England (*Art.* 1, *sec.* 17, *constitution*).

The case of *Ash* agt. *Way's Admrs.* (2 *Grattan*, 203), cited by Libbie's counsel, does not apply to this case, as that turned entirely upon the statute of Virginia legitimizing children by

the subsequent marriage of their parents, and even in that case the court was divided, voting three to two.

In *Cooley* agt. *Dewry* (4 *Pick.*, 93) it was held in Massachusetts that the mother of a bastard does not inherit his estate, refusing to agree with *Heath* agt. *White* (*supra*), decided by a divided court.

It therefore seems that in Connecticut and Vermont illegitimates may heir *through* their mother. This cannot be done in Massachusetts, and I am very well satisfied it is not the law in this state.

But the attorney for Libbie claims that her mother, as the daughter of Michael Mericlo, had an estate in expectancy in her father's real estate, which descended to Libbie from her mother, so that when the mother died Libbie became the owner of the expectant estate. In this I am satisfied he is mistaken. The statute defines " estates in expectancy" thus, " an estate in expectancy is when the right to the possession is postponed to a future period (2 *R. S.* [6*th ed.*], 1101, *sec.* 8). "Estates in expectancy are divided into — 1, estates commencing at a future day denominated future estates, and 2, reversions " (2 *R. S.* [6*th ed.*], 1101, *sec.* 9).

Bouvier, in his law dictionary (*vol.* 1, 539), thus defines an estate in expectancy, " an estate giving a present or vested contingent right of future enjoyment, one in which the right of permanency of the profits is postponed to some future period " (*Citing* 1 *Greenleaf's Cruise Dig.*, 701).

Thus if A. devise to his wife the use for life of his real estate and after her death the property to his heirs, or sons, or daughters, or to any other persons, such remaindermen have an estate in expectancy, and such estate is descendible, devisable and alienable (*Moore* agt. *Little*, 40 *Barb.*, 488; *Tracy* agt. *Ames*, 4 *Laws*, 500).

Again, the statute provides : "No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizen, forfeiture, surrender,

merger or otherwise" (2 *R. S.* [*6th ed.*], 1103, *sec.* 32). Can it be doubted for a moment that the so-called "expectant estate" of the mother of Libbie could at any time have been defeated or barred by the alienation by Michael Mericlo of the land in question. Would not a sale of his estate on execution have defeated her expectation? This was not claimed on the argument.

Again, the statute provides, "expectant estates are descendible, devisable and alienable in the same manner as estates in possession" (2 *R. S.* [*6th ed.*], 1103, *sec.* 35). It has been expressly held (*Jackson* agt. *Bradford*, 4 *Wend.*, 619) that the heir cannot convey by deed his expectations in the estate of his living ancestor. Until the death of the ancestor the child has no interest in his estate. The expectation of an estate is a very different thing from the expectant estate mentioned in the statute of descents (*Tooley* agt. *Dibble*, 2 *Hill*, 641; *Lintner* agt. *Snyder*, 15 *Barb.*, 620–626 *of opinion; Pelletreau* agt. *Jackson*, 11 *Wend.*, 120–123 *of opinion; Jackson* agt. *Waldron*, 13 *Wend.*, 178).

Thus it will be seen that, at the death of the mother of Libbie, she had no estate in the real or personal property of Michael Mericlo, her father. She had nothing that descended to Libbie. Had Libbie been legitimate she would have inherited, through her mother, from her grandfather under the statutes of descents, but that is forbidden her in her present condition. This is to be regretted, for it seems to punish a child for no fault of her own. But the courts do not make laws; they interpret them. And with all my desire to protect this young lady, I am unable to find any authority in law for so doing.

The affidavits show that the special guardian has expended the small sum realized on the sale of this piece of land in the joint support of these two children, under the order now sought to be modified. She has done it in good faith and should be protected, although the court may have erred in making the order which she has obeyed. I think the order

must be modified, as asked on this motion, with the proviso that the special guardian be protected in all she has done or expended under and in obedience to the order.

An order will be made accordingly.