---

(76 Misc. Rep. 117.)

. In re LAUER'S ESTATE. .

(Surrogate's Court, New York County. March, 1912.)

BASTARDS (§ 102*)—PROPERTY—INHERITANCE BY BASTARDS.

    An illegitimate child of a deceased sister of one who dies intestate is not entitled to share in the personal estate.

    [Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 254, 255; Dec. Dig. § 102.*]

Proceedings upon the final settlement of the accounts of administrators of the estate of Julia Lauer. Decree entered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Amend & Amend, for administrators.
Leon Kronfeld, for general guardian.

FOWLER, S. This matter comes before the surrogate on a decree settling the final account of the administrators, and for distribution of intestate's personalty. The only question is whether an only infant son of a deceased unmarried sister of intestate is entitled to share under the statute of distributions now in force. Counsel state they are unable to find any precise authority on this point in this state. This statement, if accurate, is very creditable to the civilization of the state. The ancient law of England, brought and established here, was very harsh to the unfortunate offspring of a relation not sanctioned by law. There is no doubt that the status and rights of an illegitimate child are being somewhat ameliorated by modern statutes of this state. But, unless such offspring are clearly within such statutes, their status and rights are fixed by the common law.

In common-law countries monogamy and established religion gradually put an end to the prior rights of illegitimates to share even in the household property. In earlier times their status was more favorable. After the English "Conquest" an illegitimate could not inherit, as he was hœres nullius, or incapable of inheriting landed estates. He was even incapable of becoming a member of a trade guild, and in the Middle Ages was regarded as a foreigner for some purposes of municipal law. No bastard could take holy orders without a special dispensation. Lynwood (Ed. 1679) 26. Illegitimates are technically termed "bastards" in law. Bracton makes a great division of children into "legitimi" and "bastardi" (folio 418). The common law took no notice of bastards as such, and it always presupposes that devolutions of rights to property are based on lawful wedlock. It was, I think, in view of the harshness of the common law on this point that the great presumptions in favor of legitimacy came to occupy such a prominent place in our jurisprudence, and even to the extent of shutting out proof to the contrary of the presumption, after the death of one who had enjoyed the repute of son and heir:

Justum non est aliquem post mortem facere bastardum qui toto tempore vitæ suæ pro legitimo habebatur. Co. Litt. 244a.

In this court, modeled originally on the civil and canon law, the tendency was to lessen the penalties of this terrible status and to treat antenati as legitimates. But it is well known that the statute of Merton rejected the civil law on this very point—"nolumus leges Angliæ mutari"—and the ecclesiastical courts were ultimately compelled to submit to the statute on this point.

But I shall not descend into the niceties of the old law only to be found accurately stated in out of the way places. Nor will I go further than is necessary to illustrate the point of this case. At common law a bastard has no heirs and no relations. He was, however, terminus a quo. Idle v. Cook (1705) 1 P. Wms. 78. In only one instance could a bastard formerly be heir to another, and at common law he could not take real property from his own issue. But it

is in regard to the common law regulating succession to personal property that we are exclusively concerned in this matter now before the surrogate.

I have had occasion since I came into this court to take into account the rules governing caducary succession to personal property both before and after the statute of distributions. Matter of Adams, 73 Misc. Rep. 335, 132 N. Y. Supp. 689. At the time that the statute of distributions was first enacted, the common law fixing the status and rights of illegitimates was based on a kinship deduced solely from a matrimonial status. Except through a lawful marriage there was then no right to succeed in a caducary family succession, or, in other words, to take property from the deceased member of a household in which the bastard lived, or to take the goods and chattels of any deceased person dying intestate. A bastard was neither a child nor "next of kin" in law. The statute of distributions when enacted, we may assume with safety, had illegitimates out of all contemplation. That such persons could not at common law or by the statute of distributions succeed to the personal property of an intestate even as children or next of kin of a mother is established in England (Matter of Goodman's Trusts, 17 Ch. D. 266; Matter of Standley, 5 Eq. 303), and I think sufficiently in this state, although no decision was cited to me. See Matter of Barringer, 29 Misc. Rep. 457, 459, 61 N. Y. Supp. 1090. I am so satisfied that such is law that I will not examine the point further. That such is the common-law rule as to real property (though that is not the question here) there can be no doubt. Matter of Mericlo, 63 How. Prac. 62; St. John v. Northrup, 23 Barb. 25.

The right of nullius filius to inherit from the mother who gave him birth is purely statutory (Decedent Estate Law [Consol. Laws 1909, c. 13] § 98, subd. 15), and such a statute in derogation of common law cannot be extended by implication to a right to succeed to property of the maternal kindred. The decisions cited to me from other states of the Union, being based on modern statutes, are of no authority on this point in this jurisdiction. The decree in this cause will omit the infant from all contemplation, as he can have no right to a distributive share of the personalty of this intestate, although she is the sister of his own dead mother. She is in law no relation to the infant.

Decreed accordingly.