In the Matter of the Estate of SAMUEL S. BRUINGTON, Deceased.

Surrogate's Court, New York County, May 20, 1936.

*Ehrich, Royall, Wheeler & Walter*, for Alethia Bruington.

*Berger & Landes*, for the ancillary administrator.

*Griffinger & Griffinger*, for Priscilla A. Gasque, sister of decedent.

*Kenneth J. Mullane*, special guardian.

*Joseph E. Conlon*, for Alma Bruington.

FOLEY, S.   This is an accounting by the ancillary administrator. The decedent died a resident of New Jersey on November 4, 1932. He left no will and his estate passes by intestacy. He was the owner of two parcels of real property in New York county, 247 and 249 West One Hundred and Thirty-eighth street.

Objections to the account have been filed by the special guardian of four infants on the ground that the status of his wards as heirs and distributees has not been recognized by the accounting party. The special guardian contends that these children were legitimated under the law of New Jersey. The widow and sister of the decedent contend that the children are illegitimate and are not entitled to inherit the realty in New York.

In 1906 the decedent married Alethia Rhue in Georgetown, S. C. He became an officer in the United States army in 1917. Upon his discharge after the armistice, he came to live in New York city. He remained here until 1920, when he took up his domicile in New Jersey and resided there until his death.

The decedent's wife, Alethia, never lived with him after 1917. She came to New York city in 1919 and is still a resident of New York county.

After the decedent moved to New Jersey, he commenced living with another woman, Alma Dixon. At the insistence of an uncle of this woman, she and the decedent went through a marriage ceremony in New London, Conn., in 1925. In order to further satisfy this uncle, they went through another marriage ceremony in Stamford, Conn., in 1931. Both of these " marriages " were bigamous and void under the laws of New York, New Jersey and Connecticut. The four children born to the decedent and Alma Dixon are the infants represented by the special guardian, who seeks to obtain for them a two-thirds interest in the New York realty.

The decedent had never been divorced from his wife, Alethia. Alma Dixon had been previously married in 1923. She never divorced her husband. There is no credible evidence in the record that her husband divorced her or that he is dead. She and the decedent were evidently unconcerned as to their legal right to con-

tract a second marriage. In the application for the license to marry in Connecticut both stated falsely under oath that they had not been previously married. The evidence is also clear that the decedent knew up to the time of each of the subsequent marriages that his wife, Alethia, was alive.

The special guardian argues that his wards are legitimate children of the decedent under the law of New Jersey. The particular statute of that State relied upon provides:

" An Act to provide for the legitimation of children born of a ceremonial marriage, which is subsequently declared void. (L. 1924, c. 144, p. 318.)

" 18-37. Certain children legitimatized. 1. Any child heretofore or hereafter born of a ceremonial marriage shall be the legitimate child of both parents, even though the marriage be thereafter annulled or declared void.

" 18-38. Rights not impaired. 2. Any such child shall be entitled to all the rights which such child would have enjoyed had he or she been born of a valid marriage. It is the intention of this act to make the status of any such child that of a child born of a valid marriage. (L. 1924, c. 144, p. 318.) " (Compiled Statutes of New Jersey [Cum. Supp. 1911-1924], vol. 1, p. 136.)

As his wards are the children of a ceremonial marriage (or marriages), the special guardian contends that under the wording of the statute they are legitimate from birth. He further argues that since the children are legitimate in the State of their domicile and the domicile of the decedent, their status as such must be recognized everywhere.

The special guardian's case is thus based upon the wording of the New Jersey statute and the principle enunciated in *Miller* v. *Miller* (91 N. Y. 315), that a child who is legitimate in the State where he and his parents reside is legitimate everywhere and entitled to all rights flowing from that status, including the right to inherit realty in the State where it is located.

There appears to be no reported authority in New Jersey which places the construction upon the statute urged by the special guardian in a decedent's estate. His theory apparently is that the children of a bigamous marriage, provided a ceremony is performed, are legitimatized by the statute. The reported decisions which have dealt with the construction and application of the statute have arisen in cases where both parents were living and where the validity of the marriage was questioned or the marriage was annulled and declared void. (*Caruso* v. *Caruso*, 104 N. J. Eq. 588; 146 A. 649; *Keller* v. *Linsenmyer*, 101 N. J. Eq. 664; 139 A. 33; *Renner* v. *Renner*, [N. J.] 181 A. 191.)

In my opinion, however, the construction of the New Jersey statute is immaterial and it is of no consequence here as to whether it legitimatizes, with or without a judicial decree in the lifetime of the parents, the issue of a bigamous ceremonial marriage. The record before the surrogate of the judicial proceedings in New Jersey does not disclose that the children have been recognized as legitimate in that State, nor does it show that there has been any adjudication whatsoever as to their status. The letters of administration issued to the mother of the children have been revoked by the decree of the New Jersey court made upon the application of the decedent's widow, Alethia. The New Jersey court has found that Alma, the mother of the children, is not the decedent's widow and that Alethia is his lawful widow.

Certain definite rules involving the conflict of laws have been laid down by the courts of our State and by the United States Supreme Court, which deal with the recognition to be accorded to the legitimization statutes of other States or countries and to the adjudication of the rights of children to inherit the real property located in this State left by a non-resident decedent. These rules may be summarized as follows:

(1) Under the common law, legitimacy was determined by the law of the country in which the child was born. If by the law of that country he was legitimate, he should be deemed legitimate everywhere. If illegitimate, he was deemed illegitimate everywhere. Where the laws of a foreign State or country provide that a child is legitimated by the subsequent marriage of the parents, within its jurisdiction, the status of legitimacy is recognized in this State and the child is entitled to inherit. (*Miller* v. *Miller*, 91 N. Y. 315.)

(2) There is an express exception to this rule in that the courts of our State will not recognize the statute of another State or country which purports to legitimatize a child of a marriage which is polygamous, incestuous or which is prohibited by law. (*Olmsted* v. *Olmsted*, 190 N. Y. 458; affd., 216 U. S. 386; *Adams* v. *Adams*, 154 Mass. 290; 28 N. E. 260; Story on Conflict of Laws [5th ed.], §§ 113-a and 114; 2 Beale, Conflict of Laws, § 246.1, p. 966.)

(3) The law of the State of the situs of real property governs all questions concerning its title, devolution and inheritance. (*Olmsted* v. *Olmsted*, 216 U. S. 386, affg., 190 N. Y. 458; *Hood* v. *McGehee*, 237 U. S. 611; *Monypeny* v. *Monypeny*, 202 N. Y. 90; *Matter of Osborn*, 151 Misc. 52.)

In the pending case, I regard the decision of the Court of Appeals in *Olmsted* v. *Olmsted* (*supra*) as conclusive authority for the determination that the children of the decedent by Alma Dixon are illegitimate under the laws of our State and are not entitled to

inherit the real property left by the decedent in this State. These children may be legitimate in New Jersey, under the special statute of that State, but their status is limited to matters within its jurisdiction. In the *Olmsted* case a resident of this State deserted his wife, went to another State and joined in a marriage ceremony with another woman by whom he had children. He subsequently moved to Michigan where he instituted a divorce action against his first wife, serving her by publication. Judgment of divorce was entered in that action. A Michigan statute, somewhat similar to the New Jersey statute, provided that illegitimate children were legitimatized by their parents' subsequent marriage.

The general question before the court was as to whether the children came within the class of remaindermen under the will of a testator which devised certain real estate to the lawful issue of their father. The Court of Appeals refused to give effect to the Michigan statute or to permit the illegitimate children to take the property. Its decision was plainly based upon the ground that it would be contrary to our rule of public policy to recognize the legitimacy of the children. The decree of divorce was void as against the New York wife. The prior marriage constituted a legal obstacle to the father's subsequent marriage. Only where there is no legal obstacle to the subsequent marriage may the statute of another State legitimate the issue of the second marriage. The court said: " As we have already stated, the statute was designed only for such persons as were free from legal obstacles preventing their marriage, and it consequently follows that if the divorce was void, then legal obstacles did exist to the marriage of these persons; for Olmsted had another wife living from whom he had no valid divorce, and his marriage under such circumstances was polygamous; and had the ceremony been performed in this State it would have been bigamous and punishable criminally.

" Should we sanction the doctrine contended for, then the Legislature in any State could, in effect, nullify our own statutes and deprive our own citizens of property, which under our laws they had become lawfully vested with and entitled to receive."

While the *Olmsted* case involved the vesting of a remainder under a will, the reasoning of the court and its conclusion apply with equal force to the inheritance of real property located in this State passing by intestacy. The trend of modern legislation is to save children from the brand of illegitimacy. The Legislature, in recent years, has progressively enlarged the rights of children born out of wedlock. It has, on the other hand, given no recognition as legitimate to the children of a bigamous marriage. (*Bell* v. *Terry & Tench Co.*, 177 App. Div. 123; *Matter of Crook*, 140 Misc. 721; *Matter of Thomann*, 144 id. 497.)

The reasons for the failure to accord a right of succession are plain. The first wife, especially where she is a resident of New York, as in the present case, is entitled to be protected. Under our law, as the lawful widow of the decedent, she is entitled to $10,000 and one-half of the residue of the property within our jurisdiction. If the children of the bigamous marriage are recognized as legitimate, the widow's share would be substantially diminished. In that event she would be entitled to only one-third of the estate. Our law of inheritance does not permit the illegitimate issue of a bigamous second marriage, ceremonial or otherwise, to take the property of its parent, who is guilty of misconduct, as against the innocent widow. A polygamous marriage is " odious by common consent of nations." (*Earle* v. *Earle*, 141 App. Div. 611.) To recognize these children of a bigamous marriage as heirs and distributees would be contrary to the law and the public policy of this State.

I accordingly hold that the only persons entitled to take and share in the real property located in New York State are his lawful widow, Alethia Bruington, and his sister, Priscilla A. Gasque, in the respective statutory shares fixed by subdivision 4 of section 83 of the Decedent Estate Law.

The objections of the special guardian are dismissed upon the merits. The ancillary administrator is authorized to file a supplemental account within twenty days. Objections thereto may be filed within eight days after such account is filed.

Proceed accordingly.