JOSEPHINE LEE, Petitioner, *v.* CURLIN SMITH, Respondent.

Domestic Relations Court of City of New York, Family Court Division, New York County, November 13, 1936.

*Paul Windels, Corporation Counsel [Charles C. Weinstein and Alice E. Trubin of counsel], for the petitioner.*

*Russel H. Kittel, for the respondent.*

PANKEN, J. The petition and the testimony submitted in support thereof present questions of fact and of law.

The testimony in this case presents an unusual situation. The petition alleges that the respondent is the son of the petitioner. The defense interposed by the respondent is that the petitioner is not his mother; that she is in fact his sister.

To sustain the petition, it devolves upon the moving party to establish relationship therein alleged. In the Domestic Relations Court of the City of New York, where a petitioner is a public charge, or likely to become a public charge, and is in straightened circumstances, the court will require those legally obligated to provide for such petitioner so to do.

There is no legal obligation resting upon a brother to provide for and support an indigent sister. There is a moral obligation to do so — one that rests in humaneness and which has become a part of the moral code that has developed over centuries. That obligation, however, is not enforcible in law.

The Domestic Relations Court Act of the City of New York (§ 101, subd. 4) provides as follows: " The parents, the grand-parents, the children and the grandchildren of a dependent adult who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative. The court shall determine and apportion the amount that each such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means."

The obligations, reciprocal in character, as between relatives are confined to those mentioned in the foregoing subdivision of section 101.

The facts established in the testimony, in effect, are: Curlin Smith was born in 1900 — the third child begot by one Charles Smith. He is the only one living of the three children born to petitioner. Her maiden name was Smith. She is the daughter of one Filmore and Bedie Smith. The respondent is an illegitimate child. It does not do violence to one's credulity to believe that when this child was born the parents of the petitioner accepted him as one of their own children and that in the family of seven other children belonging to his grandparents he was accepted as one of the siblings. That possibly might have been to the end of covering up the indiscretion resulting in the birth of this child by the petitioner. Whether that be the fact or not, the testimony clearly indicates that Curlin Smith was held out to be the brother of the petitioner and her siblings. He is not in a position to testify as to whether or not he is the son of the petitioner. On the other hand, Mrs. Lee, the petitioner, is in that position.

A great deal of testimony was introduced in this case by way of cross-examination which, undoubtedly, discredits the petitioner. The rule of law is that a person may testify, willfully and knowingly,

falsely to a material fact in a case, and that such person may also testify, truthfully, to other material facts in the case. The court sitting as a jury to weigh the testimony and to pass upon it, must find where the truth lies. Though the petitioner has falsely testified to material facts in the case, I am not sure that she did so willfully. Those facts which were truthful cannot be disregarded by the court in arriving at its conclusion.

Under the Domestic Relations Court Act it is required that an investigation be made by the probation department of the court. That investigation when made is available to the justice in aiding him to determine what allowance and whether one should be made for the support of a person who is or is likely to become a public charge. Such an investigation was made in this case. As a part of that investigation, the probation department, when the issue of relationship was raised, communicated with the mother of the petitioner. The response to that communication is that the respondent is not the son of petitioner's mother — that, in fact, he is the son of the petitioner.

Article 3 of the Domestic Relations Court Act prescribes the procedure prior to court action. Under sections 113, 114, 116 and 117 the probation department of the court is charged with certain duties as provided in section 113: " Immediately upon application at the court for support, the petitioner shall be personally interviewed by a probation officer of the investigation section and such information obtained as may be necessary to enable the court to deal adequately with the petition." That section then proceeds to enumerate what shall be required. Section 114 must be read together with section 111 of article 3, which section reads, in part: " Notwithstanding the provisions of any other law, a wife, child or poor relative may file with the court a petition that the court order the persons legally chargeable with their support to support said petitioner as required by law."

Under subdivision 4 of section 101 of article 2, a child is legally chargeable with the support of a parent, so that the above quoted portion of section 111 is applicable to the proceeding herein. Section 114, which reads, in part: " The home shall be promptly visited by a probation officer, near relatives of both spouses and other persons shall be interviewed, where possible, and all important statements made by the petitioner inquired into," obliges inquiry from relatives upon important statements made by the petitioner. Surely, the statement by the petitioner herein that she is the mother of the respondent, when that statement is put in issue, becomes very important. An investigation may be ordered and made subsequent to the filing of petition. Under section 121 of article 4,

quoting therefrom, " The court may in its discretion receive a petition prior to the taking of such steps by the investigation section."

In this proceeding the court believes the testimony on the controverted issue of both the petitioner and the respondent. The respondent testified that he had always been held out to be the brother of the petitioner. I find that his testimony is wholly truthful. The petitioner testified that Curlin Smith was her son by one Charles Smith. I believe her testimony on that phase of the case to be truthful.

The letter from the petitioner's mother is not in evidence and so has not been considered by the court in arriving at its conclusion. It confirms the conclusion arrived at. There has been some question as to whether the court has the right to consider in a proceeding before it an investigation made by one of its probation officers. No doubt the court has such right on the question of need of the petitioner and the ability of the respondent; and may also take into consideration such report to aid it in determining the social background and other factors which antedated the breach between the parties and which brought them into the court.

From a reading of the sections of the act hereinbefore referred to, the duty rests upon the justices of the court to take into consideration the report from its investigating or probation staff.

Having concluded that petitioner is the mother of Curlin Smith, is the latter under a legal obligation to make provision for the support of his mother? The respondent was born out of wedlock. The precise question of law, in so far as I have been able to ascertain, has not been directly passed upon by the courts of the State of New York.

The respondent was ushered into the world with a handicap. That measurably is attributable to his mother. Is an illegitimate child burdened with social disadvantages chargeable in law with the support of those who have so burdened him? The trend of the law indicates that there is no obligation on an illegitimate child to provide and support his father. That question, however, is not before me and I am not passing thereon. Is the mother in a different position than that of the father?

Under a statute passed by the Legislature and approved by the Governor of the State of New York in 1936, children born out of wedlock are not to be registered as illegitimate. Section 1240 of the Greater New York Charter, as amended by chapter 854 of the Laws of 1936, reads, in part, as follows: " There shall be no specific statement on the record of birth or the report of birth provided for

in section twelve hundred thirty-seven as to whether the child is born in wedlock or out of wedlock or as to the marital name or status of the mother."

The intent and purpose of the statute evidently is to remove any stigma which would attach to an innocent offspring because of the indiscretion or stupidity of either its mother, its father or both. While the statute is of recent origin and, therefore, it might be argued that it would not apply to an offspring born out of wedlock thirty-five years ago, it, nevertheless, is an indication of the social trend in the law. Section 120 of the Domestic Relations Law reads as follows: " Obligation of parents; liability for support and education. The parents of a child born out of wedlock are liable for the necessary support and education of the child."

The father of a child born out of wedlock is chargeable with the support of his illegitimate offspring in proceedings instituted in the criminal courts of the State. Under section 120, proceedings may be had in the Domestic Relations Court of the City of New York against a mother for the support of her child. That is buttressed by the provisions of subdivision 4 of section 101 of the Domestic Relations Court Act. That subdivision does not distinguish between legitimate and illegitimate children. It recites that children are chargeable with the support of a dependent parent or grandparent. In *State* v. *Scarbrough* (108 W. Va. 9; 150 S. E. 219) the Supreme Court of Appeals of the State of West Virginia, said: " The word ' child ' should be construed as embracing legitimate and illegitimate issue. The language employed in the title of a statute must be construed in its most comprehensive and liberal sense favorable to the validity of the act."

The fact that the child was born out of wedlock does not make him the less a child of its parent and so when the parent is in straightened circumstances and in danger of becoming a public charge, or in fact is a public charge, the obligation to support the indigent parent rests upon the shoulders of the child.

Subdivision 7 of section 83 of the Decedent Estate Law reads: " If the deceased was illegitimate and leaves a mother, and no child, or descendant, and no surviving spouse, such mother shall take the whole and shall be entitled to letters of administration in exclusion of all other persons. If the deceased shall leave a surviving spouse, the surviving spouse shall take five thousand dollars and one half of the residue, and the mother shall take the balance. If the mother of such deceased be dead, the relatives of the deceased on the part of the mother shall take in same manner as if the deceased had been legitimate, and be entitled to letters of administration in the same order."

Thus the above-quoted subdivision of section 83 of the Decedent Estate Law determines and fixes the rights of a mother of an illegitimate child. It goes beyond the obligation of an illegitimate child to support and maintain its mother. It gives to the mother an interest in the estate of her illegitimate offspring.

Can it be said that where the mother of an illegitimate child is a public charge, as in this case, the duty to support and provide for her in law rests upon the community rather than upon her own child? That would be contrary to public policy and would be in contradiction of the definite trend of the law in its social aspect.

Subdivision 13 of section 83 of the Decedent Estate Law reads in part: " If a woman die, leaving illegitimate children, or the legitimate descendants of deceased illegitimate children and no lawful issue, such children or descendants inherit her real and personal property as if such children were legitimate."

In the case before me the only living child of petitioner is Curlin Smith. If his mother were to die leaving behind her real and personal property, the respondent, under the law, would inherit from her. And so again the trend of the law indicates that the fact of illegitimacy does not deprive an illegitimate offspring of his right of inheritance from his mother. But as already adverted to, illegitimacy of children is no longer recognized under the law of our State.

On both the law and the facts, I conclude that the respondent is required to contribute to the support of his indigent mother who because of her indigence is now a public charge. I might add that from the testimony submitted to me no other conclusion can be arrived at but that the petitioner is at this time industrially incapacitated.