### In the Matter of ANONYMOUS.

Surrogate's Court, Kings County, November 19, 1937.

WINGATE, S. Despite the fact that the present *ex parte* application for letters of intestate administration might be made the subject of disposal by departmental direction, certain considerations therein involved appear to possess sufficient general interest to warrant an expression of the views of the court in respect to them.

The application is made by the surviving husband of the decedent. In purported compliance with the requirements of sections 119 and 51 of the Surrogate's Court Act of an enumeration in the petition " of all persons * * * concerning whom the court is required to have information," which is properly construable as requiring the identified listing of all statutory distributees (*Matter of Gaffney*, FOLEY, S., 141 Misc. 453, 456), the applicant, in addition to his own name, as husband, has inserted the name of another person, identifying her relationship to the decedent as " An illegitimate child of decedent," and adding the further statement: " That said decedent * * * died without lawful issue, but left surviving an illegitimate child, the said * * *. That said decedent * * * left her surviving no lawful child or children, or descendants of any lawful child or children."

At the time of the filing of this petition, the petitioner stated to the departmental head that the decedent was survived by brothers and sisters and inquired whether these should be listed in the petition. The initial question involved in the proceeding concerns only this feature of the application and is readily answerable by mere reference to the Statute of Distribution.

Although subdivision 1 of section 83 of the Decedent Estate Law provides in general terms that the distributable portion of the estate of an intestate shall, where the decedent was survived by a husband and children be distributed, one-third to the former and two-thirds to the latter, it has conclusively been determined that the word " child " or " children " when used in a statute is to be interpreted as including only legitimate children and excluding those born out of lawful wedlock or not validly legitimatized. (*Matter of Miller*, 110 N. Y. 216, 221; *Gelston* v. *Shields*, 16 Hun, 143, 151; *Van Voorhis* v. *Brintnall*, 23 id. 260, 263; revd. on other grounds, 86 N. Y. 18; *Bell* v. *Terry & Tench Co.*, 177 App. Div. 123, 124.)

When the basic theory underlying Statutes of Distribution as reflecting the probable wishes of the decedent respecting the dis-

tribution of his property (*Matter of Weissman,* 137 Misc. 113, 116; affd., on opinion of this court, 232 App. Div. 698; *Matter of Smallman,* 141 Misc. 796, 798; *Matter of Shupack,* 158 id. 873, 877; *Matter of Williams,* 162 id. 507, 509) is recalled, there appears to be no logical justification for the imposition of such re-emphasized obliquity upon unfortunate persons who have been perpetually branded with the ostracizing bar sinister through no fault of their own, and who are unquestionably often as favored objects of the affection of their misguided progenitors as their more favored blood relatives whose procreation was preceded by the sanctifying ceremonies of book and bell. Simple justice should decree that such a person " should not, in its innocence, bear all the heavy punishment * * * visited by the sins of the parent upon the child " (*Bunce* v. *Bunce,* 27 Abb. N. C. 61, 65), by the addition of deprivation of ordinary rights of devolutionary participation in its ancestor's property to the social stigma imposed by uncharitable and frequently hypocritical acquaintances.

The sole explanation for this example of social injustice is historical, although a portion of its practical operation may be palliated by arguments of expediency. It would serve no good purpose to trace the stages of growth of the prejudice against illegitimates, or " bastards " as they became known to the law, which started with the Norman conquest of England. Such unfortunates were deemed *heres nullius,* incapable of inheritance, were disqualified from becoming members of trade guilds and in the Middle Ages were regarded as foreigners for some purposes of municipal law. (*Matter of Lauer,* 76 Misc. 117, 118.) They had no heirs and no relations. (*Idle* v. *Cook,* 1 P. Wms. 78.) These cruel and contumelious conceptions were imported into this State from England and while ameliorated in many other States, remained unmodified here for more than three-quarters of a century, until, in 1855 (Laws of 1855, chap. 547), it was enacted that " Illegitimate children, in default of lawful issue, may inherit real and personal property from their mother, as if legitimate." (*Matter of Mericlo,* 63 How. Pr. 62, 64.)

In spite of occasional stated glimpses of a trend of modern legislation to alleviate the lot of the illegitimate (Cf. *Matter of Bruington,* 160 Misc. 34, 38; *Ferrie* v. *Public Administrator,* 3 Bradf. 249, 260), no law improving his plight has been enacted in this State in the intervening period and the statute then amended is now substantially incorporated in subdivision 13 of section 83 of the Decedent Estate Law, and still provides merely that an illegitimate child may inherit from its mother if she has " no lawful issue," in like manner as if it were legitimate.

It follows, however, that where, as in the present estate, the decedent was a woman and left an illegitimate child and no other children, such illegitimate is a " child " for all purposes of inheritance to the same extent and in like manner as if it were legitimate, and thus by a combination of subdivisions 13 and 1 of section 83 becomes a " child " within the connotation of the latter.

In view of this fact the question arises as to the propriety of the allegations of illegitimacy in the present petition. By reason of the alleged fact that there are no other children of this decedent, this child is a " child " for purposes of inheritance within the intendment of subdivision 1, wherefore the allegations of the petition respecting her illegitimacy are at best redundant and unnecessary, and at worst, scandalous.

It is the uniform practice of all courts to discourage the making of unnecessary allegations particularly when they tend to reflect upon the character or standing of others or may expose them to public obloquy. (*Opdyke* v. *Marble*, 18 Abb. Pr. 375, 376; *Stokes* v. *Leary*, 54 App. Div. 631, 632; *Bulova* v. *Barnett, Inc.*, 193 id. 161, 164; *Hanson Co.* v. *Collier*, 119 id. 794, 795; *Persch* v. *Weideman*, 106 id. 553, 554; *Armstrong* v. *Phillips*, 60 Hun, 243, 244.)

This policy is of especial importance in Surrogates' Courts in view of the many *ex parte* applications in which a person attacked is afforded no opportunity of self-defense. It is pursuant thereto that no petition for adoption will be entertained which reflects upon the legitimacy or paternity of the person whose adoption is sought. The reasons motivating suppression of unnecessary and scandalous allegations in such a case are equally present here and the court will not tolerate their inclusion.

Rule 103 of the Rules of Civil Practice authorizes the court to strike from a pleading any redundant, unnecessary or scandalous matter, or, in the alternative, to order an amended pleading to be served omitting the objectionable language. This authority will be exercised in the present instance.

Were it not for the provisions of section 18 of the Surrogate's Court Act which require the surrogate to " preserve in his office " every paper relating to any proceeding, an order would be made directing the physical withdrawal of the present petition. In view of this enactment, authority to this end appears to be wanting. Under the circumstances, therefore, the petition will be impounded and sealed and the petitioner will be directed to file an amended petition omitting the objectionable matter therefrom.

Proceed in conformity herewith.