HARRIET " CASTELLANI," Petitioner,* *v.* JAMES R. " CASTELLANI "
and CLELIA C. " SMITH," Respondents.*

Domestic Relations Court of New York, Family Court, Bronx County,
May 7, 1941.

*William C. Chanler, Corporation Counsel [Rose Schneph* and
*Herbert M. Levy* of counsel], for the petitioner.

*James R. " Castellani,"* respondent in person.

*Clelia C. " Smith,"* respondent in person.

SICHER, J. This is one of two companion proceedings, in the
other of which the same petitioner seeks support also from the
father of the respondents herein as petitioner's alleged husband.

That co-petition is being dismissed simultaneously herewith,
as a matter of fact and of law, on the ground that petitioner has
failed to sustain the burden of proving that the father of the respond-
ents herein and she are in law husband and wife. (See 28 N. Y.
Supp. [2d] 855–902.) As a corollary, the petition against the
children-respondents is also hereby dismissed, as a matter of law,
for lack of jurisdiction, upon the ground that in this State no
legal duty of support of either parent has been cast upon a child
born out of wedlock.

The contrary view was expressed by my esteemed associate,
Mr. Justice JACOB PANKEN, in *Lee* v. *Smith* (161 Misc. 43). That
opinion remarks that, so far as he was able to ascertain, the precise
question of law had not been directly passed upon by any court in
this State; and no other decision squarely in point has come to my
notice. But exploration of collateral aspects not mentioned in
*Lee* v. *Smith* (*supra*) constrains dissent from Judge PANKEN's
conclusion, much as I respect his learning, experience and warm-
hearted conception of the jurisdiction and functions of both divisions
of this court. For, *Lee* v. *Smith* (*supra*) overlooked, or at least

* This opinion as here published substitutes fictitious surnames, in consonance
with the spirit of the N. Y. City Dom. Rel. Ct. Act, § 52.

it did not fully consider, the historical background, controlling rules of statutory construction, and the still continued public policy of the New York State Legislature in relation to children born out of wedlock.

In the first place, at common law no duty rests even upon a legitimate child to support his parent. (*Ulrich* v. *Ulrich*, 136 N. Y. 120, 123; *Edwards* v. *Davis*, 16 Johns. 281, 285; *Herendeen* v. *DeWitt*, 49 Hun, 53, 54, 55; *Harrigan* v. *Cahill*, 100 Misc. 48, 50; *Matter of Salm*, 171 id. 367; affd., 258 App. Div. 875.) " By the law of nature a man was bound to take care of his own father and mother; but there being no temporal obligation to enforce the law of nature, it was found necessary to establish it by Act of Parliament." (*Rex* v. *Munden*, 1 Strange, 190; 93 Eng. Reprint, 465.) " The liability of a child to support its parents, who are infirm, destitute, or aged, was created in England and here by statute. The statute in that respect created duties unknown to the common law." (*Ulrich* v. *Ulrich, supra*, at p. 123.) Nor may such liability, being wholly statutory, be extended beyond the terms of the particular statute creating it. (*Edwards* v. *Davis, supra; Herendeen* v. *DeWitt, supra; Harrigan* v. *Cahill, supra;* 48 C. J. 511.)

The prototype of all legislation of that genre in this country is " An Act for the Relief of the Poor " passed in the forty-third year of the reign of Queen Elizabeth (see *People* v. *Hill*, 163 Ill. 186, 191, 192; 46 N. E. 796), at which epoch a child born out of wedlock was *nullius filius*, without any rights of inheritance and in many other ways outside the protection of the law. (See Surrogate WINGATE's opinion in *Matter of Anonymous*, 165 Misc. 62, at p. 64, 65; and Surrogate FOWLER's opinion in *Matter of Lauer*, 76 Misc. 117, 118.) " The ancient law of England, brought and established here, was very harsh to the unfortunate offspring of a relation not sanctioned by law. * * * In common law countries monogamy and established religion gradually put an end to the prior rights of illegitimates to share even in the household property." (*Matter of Lauer, supra*, at p. 118.) " These cruel and contumelious conceptions were imported into this State from England and while ameliorated in many other States, remained unmodified here for more than three-quarters of a century, until, in 1855 (Laws of 1855, chap. 547), it was enacted that ' Illegitimate children, in default of lawful issue, may inherit real and personal property from their mother, as if legitimate.' (*Matter of Mericlo*, 63 How. Pr. 62, 64.) In spite of occasional stated glimpses of a trend of modern legislation to alleviate the lot of the illegitimate. (Cf. *Matter of Bruington*, 160 Misc. 34, 38; *Ferrie*

v. *Public Administrator*, 3 Bradf. 249, 260), no law improving his plight has been enacted in this State in the intervening period and the statute then amended is now substantially incorporated in subdivision 13 of section 83 of the Decedent Estate Law, and still provides merely that an illegitimate child may inherit from its mother if she has ' no lawful issue,' in like manner as if it were legitimate." (*Matter of Anonymous, supra,* at p. 64.)

Meanwhile, liability of a legitimate child for the support of a " poor, blind, lame or decrepit " parent had been written into the Revised Statutes of the State of New York (*Harrigan* v. *Cahill, supra,* at pp. 49, 50; *Edwards* v. *Davis, supra,* at p. 285), in substantially the same form as chapter 2 of 43 Elizabeth; and the present " poor relative " provisions (Social Welfare Law, § 101, Code Crim. Proc. § 914, and, for and within the City of New York, N. Y. City Dom. Rel. Ct. Act, § 92, subd. 3 and subd. 9 and § 101, subd. 4) — stem from those Revised Statutes, enacted while an illegitimate child was virtually outlawed.

Section 101 of the Social Welfare Law reads: " Liability of Relatives to Support. 1. The husband, wife, father, mother, grandparent, child or grandchild of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person."

Section 914 of the Code of Criminal Procedure, as amended by chapter 589 of·the Laws of 1933, is now substantially identical with section 101 of the Social Welfare Law.

Subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York, the basis of the petition herein, reads: " The parents, the grandparents, the children and the grandchildren of a dependent person over seventeen years of age who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative. The court shall determine and apportion the amount that each such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means."

Thus, in section 101 of the Social Welfare Law, the word " child " is linked with " husband," " wife," " father," " mother," " grandparent " and " grandchild," all of them familial terms. Likewise subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York is part of a statute creating and defining the powers of a *Family* Court; and the word " children " is there too grouped with familial terms, together with a direction

for apportioning the burden of support of the dependent " poor relative " according to the respective means of the constituents of the entire group of " parents," " grandparents," " children " and " grandchildren " before the court. Yet in New York State a child born out of wedlock is not on a parity with legitimate offspring; he is without any rights of inheritance from or thru his father; the latter is not under obligation for his support save a limited liability imposed by statute (*People ex rel. Lawton* v. *Snell*, 216 N. Y. 527) and within the city of New York solely enforcible in a criminal court (Inferior Criminal Courts Act, § 60); his statutory right of inheritance from his mother is restricted to inheritance from the mother herself (*Matter of Cady*, 257 App. Div. 129; affd., 281 N. Y. 688; *Matter of Lauer, supra*); and, even as to the mother, such statutory right exists only if she die without leaving legitimate issue. (Dec. Est. Law, § 83, subd. 13; *Matter of Battalico* v. *Knickerbocker Fireproof Co.*, 250 App. Div. 258, at p. 262.) To impute to a Legislature which still withholds from a child born out of wedlock normal rights of inheritance and support an inconsistent intent nevertheless to cast upon such disparaged individual the burden of supporting his parents apportionably with favored lawful offspring would be unreasonable and also violate a general rule of statutory interpretation firmly established in this State, namely: " It is a rule of construction that, *prima facie*, the word ' child ' or ' children,' when used in a statute, will or deed means legitimate child or children. In other words, bastards are not within the term ' child ' or ' children.' * * * And the rule is well settled that words having precise and well-settled meaning in the jurisprudence of a country have the same sense in its statutes unless a different meaning is plainly intended." (*Bell* v. *Terry & Tench Co.*, 177 App. Div. 123, at p. 124, 125.)

The case just cited held that under the Workmen's Compensation Law then (1917) in force in New York the illegitimate children of a deceased employee were not entitled to the benefits provided by that statute for dependent children, the opinion stating: " Whatever may have been held in other jurisdictions, under ever varying language and differing conceptions of public policy, there is no justification for reading into the statute a provision which shall permit illegitimate children to share in the benefits provided for the lawful issue of one suffering through an industrial accident. If the Legislature wants to assume this responsibility it should do so in plain and unequivocal language; it ought not to be done through strained and unnatural construction on the part of the courts." (pp. 125, 126.)

That particular gap in that one statute was promptly filled by a legislative amendment (Laws of 1917, chap. 705) which provided that for all purposes of Workmen's Compensation Law the word " child " should thereafter include an " acknowledged illegitimate child dependent upon deceased." But in the absence of an express statutory definition and despite the contrary ruling of the Circuit Court of Appeals, Second Circuit, in *Middleton* v. *Luckenbach S. S. Co., Inc.* (70 F. [2d] 326 [construing in 1934 the Federal Death Act]), the doctrine of *Bell* v. *Terry & Tench Co.* still prevails in this State. " The interpretation of the word ' child ' or ' children ' in such a Federal statute "— Federal Employers' Liability Act — " as including or not illegitimate children depends upon the law of the State wherein the statute is being enforced. * * * *It is not claimed by respondent that under the law in this State the word ' child ' in a statute or will, without any other description, would include an illegitimate child. It would be useless for her to make any such contention because the law is the other way.*" (*Hiser* v. *Davis*, 234 N. Y. 300, at p. 305, italics supplied, citing *Bell* v. *Terry & Tench Co., supra.*) And as recently as May, 1939, the Appellate Division, Third Department, in *Matter of Cady* (*supra*), cited *Bell* v. *Terry & Tench Co.* (*supra*) as authority for the aforementioned proposition that " it is a general rule of construction that when the words ' child,' ' children ' or ' descendants ' are used in a statute the meaning is legitimate or lawful children or descendants " (*Matter of Cady, supra*, at p. 130); and *Matter of Cady* was, in October, 1939, affirmed by the Court of Appeals (281 N. Y. 688). So, too, *Bell* v. *Terry & Tench Co.* (*supra*) was lately cited by Surrogate FOLEY in support of his ruling that altho " the trend of modern legislation is to save children from the brand of illegitimacy " and " the Legislature, in recent years, has progressively enlarged the rights of children born out of wedlock," nevertheless, " it has, on the other hand, given no recognition as legitimate to the children of a bigamous marriage." (*Matter of Bruington*, 160 Misc. 34, at p. 38.)

The weight of authority throughout the United States also accords with *Bell* v. *Terry & Tench Co.* (*supra*). (See 7 Words and Phrases [Perm. Ed.] pp. 42–49.)

True, by chapter 854 of the Laws of 1936, section 383 of the Public Health Law, was amended to direct that " there shall be no specific statement on the birth certificate as to whether the child is born in wedlock or out of wedlock or as to the marital name and status of the mother;" and there can be no dissent from Mr. Justice PANKEN's observation that " the intent and purpose of the statute evidently is to remove any stigma which would

attach to an innocent offspring because of the indiscretion or stupidity of either its mother, its father or both " (*Lee* v. *Smith, supra*, at p. 47), nor dissent from his further observation that such statutory amendment " is an indication of the social trend in the law." (*Lee* v. *Smith, supra*, at p. 47.) But in the light of the foregoing demonstration of controlling authorities there seems no soundness in the conclusion drawn in *Lee* v. *Smith* (*supra*) that in New York there have now been wiped out the encrusted distinctions between legitimate and illegitimate offspring and their relative legal rights and duties.

Nor is there persuasive force in the additional argument that " the fact that the child was born out of wedlock does not make him the less a child of its parent and so * * * the obligation to support the indigent parent rests upon the shoulders of the child." (*Lee* v. *Smith, supra*, at p. 47.) That such conclusion may be a *non sequitur* is manifested by the express limitation of *Lee* v. *Smith* (*supra*) to a finding of obligation for support of the mother only and the purposeful refusal to pass upon the question whether the same duty exists toward the putative father; the opinion remarking: " The trend of the law indicates that there is no obligation on an illegitimate child to provide and support his father." (*Lee* v. *Smith, supra*, at p. 46.) Nevertheless, despite the uncertainty and greater difficulty of proof of paternity than of maternity, a child born out of wedlock is " no less the child " of its putative father than of its mother. So, *Lee* v. *Smith* in effect reads into subdivision 4 of section 101 of the New York City Domestic Relations Court Act, after " children " not only the words " whether born in or out of wedlock " but additional language importing that the putative father is excluded while the mother is not.

Still another bar to concurrence in *Lee* v. *Smith* is its implied assumption that the Legislature has given to the word " children " one meaning in subdivision 4 of section 101 of the Domestic Relations Court Act and a different meaning to the word " child " in section 91 of the Domestic Relations Court Act, despite the principle that " the intent and purpose of the legislative commands must be found from the statutes relating to the same general subject-matter taken as a whole." (*Betz* v. *Horr*, 276 N. Y. 83, at p. 88.) Section 91 of the Domestic Relations Court Act provides that " the Family Court shall have (1) jurisdiction within the City to hear and determine all proceedings to compel the support of a wife, child or poor relative." But there the word " child " must be restricted to one born in wedlock, inasmuch as the Legislature has conferred upon Court of Special Sessions of the City of New York *exclusive* jurisdiction, within the city of New York,

of filiation proceedings and of the enforcement of the statutory duty of parental support of a natural child. (Inferior Criminal Courts Act, §§ 60 and 64.)

Arizona, for example, has by statute enacted that " every child is the legitimate child of its natural parents." (Arizona Revised Code, Struckmeyer [1928], § 273.) But New York is not yet a State aligned with that advanced social policy of abolishing all legal distinctions between children born in and out of wedlock. For reasons having deep historical roots and deemed by it sufficient, the New York Legislature has seen fit to mitigate the harsh common law concerning " bastards " to a limited extent only; and this court must bow to such mandate. In the oft-quoted language of Mr. Justice HOLMES: " No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop principles which he finds, with such consistency as he may be able to attain." (*Stack* v. *N. Y., N. H. & H. Railway Co.*, 177 Mass. 155, 158; 58 N. E. 686.)

Doubtless, much may be urged in support of, and perhaps less in opposition to, the view that, because a child born out of wedlock may have the tender care of its mother under heavy economic and social odds and often without the child's knowing its father, there should be imposed the duty of indemnifying the public against the cost of maintenance of such mother in after years. But those are considerations for the Legislature. " If the Legislature wants to assume this responsibility it should do so in plain and unequivocal language; it ought not to be drawn through strained and unnatural construction on the part of the courts." (*Bell* v. *Terry & Tench Co.*, *supra*, at p. 126.)

Finally, dismissal of the petition against the children-respondents for the above-described reasons paves the way for an appeal by corporation counsel of the city of New York, under section 59 of the Domestic Relations Court Act of the City of New York, and an appellate court determination whether the existing statute is construed correctly in this opinion or in *Lee* v. *Smith* (*supra*). It is suggested that this point might be taken up upon a record consisting merely of the petition, this opinion, and the order of dismissal, without the expense of transcribing and printing the voluminous minutes.

Order dismissing petition in accordance with this opinion is being filed simultaneously herewith. Notice shall be given to the parties and attorney for petitioner pursuant to the subjoined direction to the clerk of this court.