MATTER OF H——T——W——

## In DEPORTATION Proceedings

### A-7415273

*Decided by Board February 12, 1960*

**Common-law marriage—Proof required under New York law.**

(1) Evidence that parties lived together, used the same name, were regarded as husband and wife, and were the parents of a child is not sufficient to prove a valid common-law marriage in New York. Failure to show mutuality of consent and intention bars a finding that such a marriage existed between them.

(2) Since the evidence of respondent's relationship with a woman between 1927 and 1932 fails to establish a valid common-law marriage, his ceremonial marriage in 1943 to another woman cannot be regarded as bigamous so as to preclude him from establishing good moral character during the statutory period required for the grant of voluntary departure.

(*Note:* Common-law marriages are valid in New York if entered into prior to April 29, 1933.)

CHARGE:

Warrant: Act of 1924—After admission as visitor, change of status to government official—Failed to maintain status.

#### BEFORE THE BOARD

**Discussion:** The respondent appeals from an order entered by the special inquiry officer October 6, 1959, directing his deportation on the charge that after admission as a nonimmigrant visitor and thereafter a change of status to that of a government official, he failed to maintain status. Exceptions have been taken to the denial of discretionary relief.

The respondent, a native and citizen of China, male, 63 years of age, last entered the United States through the port of Seattle, Washington, on September 2, 1925. He was admitted as a student under section 4(e) of the Immigration Act of 1924 (8 U.S.C. 204(e), 1940 ed.). His status was changed to that of a foreign government official in 1938. He has failed to maintain status since January 31, 1950. Deportability on the stated charge is conceded.

The special inquiry officer concludes that respondent is statutorily ineligible for discretionary relief because he is incapable of establishing his good moral character by reason of an adulterous rela-

562

tionship which has existed since March 6, 1943. The special inquiry officer finds that there is substantial evidence which establishes that the respondent did enter into a valid common-law marriage with one V——C—— in 1926 or 1927 and that since this marriage has not been terminated, his ceremonial marriage to L——P—— in 1943 was bigamous.

The respondent has the burden of establishing his eligibility for discretionary relief (8 CFR 242.16(e) ; *Matter of T——S——Y——*, 7 I. & N. Dec. 582, B.I.A., Sept. 11, 1957). Pursuant to this burden, respondent has submitted evidence of his ceremonial marriage to a United States citizen, one L——P——, at the Riverside Church in New York City on March 6, 1943, the usual affidavits attesting to his good moral character and the fact that he has no criminal record.

The special inquiry officer attacks the validity of respondent's marriage to L——P—— on March 6, 1943. The attack is based on evidence in this and prior proceedings [1] to the effect that respondent resided with one V——C—— from on or about 1927 to 1932 in a common-law relationship and is the father of a child by that relationship. The special inquiry officer is of the opinion that respondent's admissions are sufficient to establish a common-law marriage between respondent and V——C—— which is valid in the State of New York if entered into prior to April 29, 1933.

We are not concerned here with a presumption of validity as between successive marriages since respondent contends that he was married on one occasion only, to wit, the ceremonial marriage performed on March 6, 1943. The issue presented is whether there is sufficient evidence to support the special inquiry officer's finding of a valid common-law marriage under the laws of the State of New York. The courts of the State of New York have held that in order to establish the existence of a common-law marriage it requires clear, consistent, and convincing evidence that there was a valid contractual agreement "Per verba de presenti" between the parties to live together as husband and wife (*Application of Durkin*, 93 N.Y.S. 2d 354, Sup. Ct. of N.Y., App. Div., Nov. 16, 1949; *Castellani* v. *Castellani*, 28 N.Y.S. 2d 879 (1941) ; *Boyd* v. *Boyd*, 252 N.Y. 422, 169 N.E. 632, C.A.N.Y. (1930)).

The validity of any common-law marriage is always open to suspicion (*Boyd* v. *Boyd, supra*). As we review the record, the only evidence supporting the existence of a common-law marriage is testimony and statements in former immigration proceedings to the effect that there was open cohabitation over a period of approximately 5 years, the birth of issue and respondent's holding out of V——C—— as his wife.

---

[1] See hearing accorded in deportation proceedings September 13, 1951, and statements taken from respondent and his wife on April 27, 1950, and March 22, 1951, respectively (Exhs. R2–R3, Exhs. 9, 10, 11 and 12).

Opposed to this evidence is respondent's testimony in this proceeding that he held out V——C—— as his wife merely to protect the legitimacy of the child born to her. Also opposed to the existence of a valid contractual agreement "Per verba de presenti" are statements made by V——C—— and her mother on the occasion of her admission to the Manhattan State Hospital during December of 1934 and her transfer to the Pilgrim State Hospital in November of 1935. The Pilgrim State Hospital of the State of New York reports, "On admission, this patient (V——C——) listed herself as single. Anamnestic data obtained from her mother also indicated that the patient was single and was never married." We also have before us an "affidavit for license to marry" executed by respondent and L—— C——P—— on March 2, 1943. Respondent, in answer to the question "Number of previous marriages of groom," stated "None." This documentary evidence was not a part of the record when we considered the case on August 14, 1956 (see page 2 of Board's opinion of August 14, 1956).

The tests applied for the sufficiency of proof in this class of cases by the courts of New York may be stated as follows: To prove a common-law marriage there must be clear, consistent, and convincing evidence of an agreement between the parties, a present consent *per verba de presenti*, to take each other as husband and wife, to enter into a relation which was to continue until death did them part, with the resulting obligations of husband and wife (*Boyd v. Boyd, supra; In re Reynolds' Estate*, 9 N.Y.S. 2d 274; *Graham v. Graham*, 207 N.Y.S. 195; *Moller v. Sommer*, 150 N.Y.S. 1097).

When subjected to these criteria the weight of the evidence points strongly to the conclusion that respondent and V——C—— never entered into a valid common-law marriage. An insurmountable bar to a finding that a marriage between the parties ever existed are the statements made by both respondent and V——C—— long before the institution of immigration proceedings in July of 1950 that they were not married (see exhibits R1 and 9).

The fact that respondent and V——C—— lived together, used the same name, were regarded as husband and wife and were the parents of issue does not prove a mutual *bona fide* intention and agreement to marry. Mutuality of consent and intention are the essential elements in the establishment of a valid common-law marriage (*In re Reynolds' Estate*, and cases cited at page 275, *supra*; *Castellani v. Castellani, supra*).

Accordingly, we find that respondent's marriage to L——P—— on March 6, 1943, was not bigamous and that his relationship with her since March of 1943 is not adulterous. Respondent has submitted affirmative evidence of his good moral character. The order directing respondent's deportation will be withdrawn and voluntary departure will be granted.

**Order:** It is directed that the order of deportation entered by the special inquiry officer on October 6, 1959, be and the same is hereby withdrawn.

*It is further directed* that the alien be permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, and under such conditions as the officer-in-charge of the district deems appropriate.

*It is further directed* that if the alien does not depart from the United States in accordance with the foregoing, the order of deportation be reinstated and executed.