In the Matter of the Petition of JOHN P. TOMPKINS, Respondent, for the Revocation of Letters of Administration Issued to CATHERINE G. H. TOMPKINS, Appellant, as Administratrix, etc., of STEPHEN B. TOMPKINS, Deceased.

First Department, November 30, 1923.

Executors and administrators — petition to revoke letters of administration to widow on ground that she had husband living at time of marriage to decedent — burden of proof on petitioner to show invalid marriage — burden can be sustained only by proof that first husband was living at time administratrix married intestate.

In proceedings to revoke letters of administration issued to the widow of the intestate upon the ground that at the time she married the intestate she had a husband living and was not, therefore, the legal wife of the intestate, the burden

of proof is on the petitioner to prove that the marriage to the intestate was invalid, and in order to sustain that burden it is necessary to prove that the first husband was alive when the marriage between the administratrix and the intestate was contracted.

CLARKE, P. J., and DOWLING, J., dissent.

APPEAL by Catherine G. H. Tompkins from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 30th day of December, 1922, revoking letters of administration issued to the appellant by the said Surrogate's Court.

*Henry L. Rupert* [*Solon J. Liebeskind* of counsel], for the appellant.

*Duncan & Campbell* [*Walter Bruchhausen* of counsel], for the respondent.

FINCH, J.:

This is a proceeding brought by a son to revoke letters of administration issued to his stepmother as the widow of his father, upon the ground that she was not the lawful wife of the decedent. Upon the trial it appeared that the administratrix on March 30, 1892, was married to one Clifford McGill or Magill. On June 7, 1920, she married the decedent and lived with him and cared for him as his wife from that time until his decease. The petitioner contended that the administratrix had not used due diligence to ascertain whether or not her former husband was alive before contracting the second marriage, but that on the contrary she had good reason to believe that he was alive within five years of the date of said second marriage. The administratrix contended that she had not seen or heard from her first husband for upwards of five years before her remarriage, and that although she and the decedent had made investigations to ascertain his whereabouts, they had been unable so to do and from such information as they received, believed him to be dead.

The appellant urges that the proof adduced by the petitioner was insufficient to sustain his contentions. It is unnecessary, however, to pass upon this question to decide this appeal, since the burden of proving that the second marriage was invalid was upon the petitioner and he failed to sustain this burden by showing that the first husband was alive when the second marriage of the administratrix and the decedent was contracted.

The presumption of the validity of a marriage is sufficiently strong to cast the burden of showing its invalidity upon those who attack it. (*Hynes* v. *McDermott*, 91 N. Y. 451, 458.) If the appellant's first husband was dead at the time of her remarriage, said marriage was lawful, and before the petitioner can success-

fully attack the same he must establish as a part of his affirmative case that the former husband was living at the time of the second marriage. (*Price* v. *Tompkins*, 108 Misc. Rep. 273; affd., 190 App. Div. 967.)   The reason for this is shown in *Hunter* v. *Hunter* (111 Cal. 261) where the court stated: " But it is said the marriage of the parties to this suit took place only about four and one-half years after the marriage to Milam, and it will be presumed ·that Milam. was alive, in the absence of proof to the contrary.   There was no proof tending to show that Milam was dead, or that his chance for life was below the average; therefore it is contended the court should have found that he was alive.

" This presumption of the continuation of life is, however, overcome by another.   It is presumed that a person is innocent of crime or wrong.   \*   \*   \*   There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized.   Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce.   A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative   \*   \*   \*   that the first marriage had not ended before the second marriage."

There was no proof submitted showing that McGill was alive, and hence the petitioner has failed in his proof.

It follows that the decree appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

McAVOY and MARTIN, JJ., concur; CLARKE, P. J., and DOWLING, J., dissent.

Decree reversed and a new trial ordered, with costs to appellant to abide the event.