## In the Matter of the Estate of NICHOLAS SCISCENTI, Deceased.

Surrogate's Court, Bronx County, December 12, 1935.

*Murray J. Perelstein* [*Sidney S. Hodes* of counsel], for the petitioner, Daniel Sciscenti.

*Pascal J. Fortinash,* for the respondent, Angelina Sciscenti.

HENDERSON, S. Application is made by a son of the decedent for the revocation of the respondent's letters of administration on the ground that she is not the widow of the decedent.

The matter has been submitted upon an agreed state of facts.

Prior to 1920 the respondent had contracted a marriage with one Vincenzo Piscola who disappeared in that year. She "will

testify that she had not heard from him, seen him or could not locate him from that time to this time." On November 25, 1932, she petitioned the Supreme Court in Bronx county for an order dissolving her marriage pursuant to sections 6 and 7-a of the Domestic Relations Law. On December 3, 1932, she went through a form of marriage with the decedent in the Borough Hall, Bronx county. On September 26, 1933, a final judgment was entered dissolving her marriage with Piscola. Since such dissolution no marriage ceremony was performed between her and the decedent, who died on December 6, 1934. There is no issue of her marriage with the decedent. No dissolution proceeding was ever had other than the one above mentioned, and no other matrimonial proceeding of any kind was ever instituted by, against or between her and Piscola.

No contention is made that the respondent's formal marriage with the decedent was not in conformity with sections 11 and 11-a of the Domestic Relations Law. No marriage is asserted in any other state or country.

Some years ago I had occasion to consider somewhat similar circumstances in another revocation proceeding (Matter of Conley, 137 Misc. 455). The dissolution of the earlier marriage of the present administratrix and the opposing arguments of counsel in their briefs submitted herein justify, perhaps, a summarization of my conclusions more extended than would otherwise be necessary.

In 1922 the following relevant changes were made in the Domestic Relations Law: Subdivision 3 of section 6 was amended to read as it now reads (Laws of 1922, chap. 279, § 1); former subdivision 5 of section 7 was repealed (Laws of 1922, chap. 279, § 2), and a new section, 7-a, was added (Laws of 1922, chap. 279, § 3). These statutory changes became effective on March 25, 1922. Since that date, a marriage contracted by a person whose spouse by a former marriage is living, is no longer merely voidable but is absolutely void, whether or not such spouse has been absent and not known to be living for five or more years, unless such former marriage had previously been annulled or dissolved in one of the manners prescribed in section 6, so amended, or unless such former spouse had previously been finally sentenced to imprisonment for life.

No marriage has been solemnized since the respondent's former marriage was dissolved and she may not assert any common-law marriage with the decedent subsequent to such dissolution. Her former marriage was not dissolved until after the statutory prohibition of common-law marriages in this State again became effective on April 29, 1933 (Dom. Rel. Law, § 11, opening paragraph, as amd. by Laws of 1933, chap. 606).

There is no evidence of any such common-law marriage between December 3, 1932, and April 29, 1933.

If the respondent's former husband was alive on December 3, 1932, the respondent and the decedent were never lawfully wedded and she is not his widow. The agreed state of facts is silent upon that question, except as above noted, and no other evidence has been offered with respect thereto.

There is an inference from the fact of Piscola's existence in 1920 that he continued to live until December 3, 1932. (*Matter of Katz,* 135 Misc. 861, 867.) A presumption to that effect may follow such inference in the absence of any rebutting evidence as to his health, habits or age or as to the circumstances of his disappearance. It is not rebuttable by any inference of his death from his unexplained absence for twelve years because that inference does not ripen into a presumption of his death (Civ. Prac. Act, § 341; Surr. Ct. Act, § 119, subd. 2; § 144, subd. 3), in the absence of the premises prescribed by such statutes and of any supporting evidence as to his property, health, habits or age or as to the circumstances of his disappearance, and as to the efforts made to locate him. (*Matter of Katz, supra,* 865, 871.)

The presumption of his continued existence, however, meets the equally, if not more persuasive presumptions that the respondent's ceremonial marriage with the decedent was valid (*Matter of Kotlik,* 152 Misc. 802, 803) and that she is innocent of any crime or act of moral turpitude. (*Clayton* v. *Wardell,* 4 N. Y. 230, 237, 239, 241.)

The burden of showing the invalidity of such ceremonial marriage rests upon the petitioner who is now attacking it. (*Matter of Tompkins,* 207 App. Div. 166.) He has carried such burden to the extent of proving that the respondent had contracted a prior marriage which had not been annulled or dissolved by any court at the time of her disputed remarriage. That is not sufficient. If her former husband was dead on December 3, 1932, her marriage with the decedent was valid. The petitioner must also establish the fact that the former husband was living on that date. (*Romps* v. *Romps,* 209 App. Div. 832; *Matter of Tompkins, supra; Matter of Callahan,* 142 Misc. 28, 38; affd., 236 App. Div. 814; affd., 262 N. Y. 524; *Matter of Conley, supra; Price* v. *Tompkins,* 108 Misc. 263, 273; affd., 190 App. Div. 967.) This he has not done, and the above-noted inferences and presumptions have not lightened his burden.

The respondent's marriage with the decedent was valid and she is his widow.

The petition is dismissed upon the merits, without costs.

Settle decree accordingly.