### In the Matter of the Estate of SADIE GROPEN, Deceased.

Surrogate's Court, Bronx County, March 24, 1937.

*Arthur A. Henning,* for the petitioner.
*Hyman B. Schutzer,* for the administrator.

HENDERSON, S. Max Dollinger, a brother of the decedent, brings this proceeding to revoke letters of administration granted to Samuel Gropen. He alleges that letters were obtained upon the false suggestion that Samuel Gropen was the husband of the deceased, and as such, entitled to administer the estate.

Samuel Orenstein and Sadie Dollinger were married in Austria prior to 1907 which is the year that they immigrated to the United States and lived together in lower Manhattan. Max Dollinger, the brother, came some time thereafter and made his home with them. According to Dollinger, Orenstein left in 1911. Samuel Gropen took up his abode with Dollinger and Mrs. Orenstein. The time is in dispute. Dollinger testified that it was prior to Orenstein's departure, while according to Gropen's testimony, he never met Orenstein. I credit the testimony of Gropen who further says that he first met Dollinger, who introduced him to Mrs. Orenstein and invited him to live with them. Gropen had been married under the name of Fishman and had obtained a divorce. Dollinger told him that Mrs. Orenstein was divorced and suggested that they should marry. They applied for a marriage license on April 25, 1912. On the application, they described themselves as unmarried and no mention of divorce was made by either of them. The ceremonial marriage took place before a rabbi on May 11, 1912, at which Dollinger was present. They lived together thereafter as husband and wife for twenty-five years until the decedent died. One Benny Rubinger, who was present at the marriage of the decedent to her first husband in Austria, visited the Orensteins in New York in 1907. He met both Mr. and Mrs. Orenstein on a number of occasions subsequently, but never together, and he did not discuss their marital affairs with either one on those occasions. He last saw Orenstein in 1929. Orenstein was also seen subsequent to Gropen's marriage by Dollinger and Clara Dollinger, a niece, who is the only other distributee, if there is no surviving husband.

Our civilization is based upon the family which in turn depends upon the marriage status. The State is so zealous to protect the institution of marriage that the practice of polyandry, of which the petitioner accuses the decedent with his admitted acquiescence, is a crime, and it will be presumed that the decedent is not guilty of an act of moral turpitude. (*Clayton* v. *Wardell*, 4 N. Y. 230, 237, 239, 241.) The law indulges a presumption that a ceremonial marriage is valid. (*Matter of Meehan*, 150 App. Div. 681, 682, 684; *Smith* v. *Smith*, 194 id. 543, 548, 554; *Matter of Sciscenti*, 157 Misc. 499, 501; affd., 248 App. Div. 702; *Matter of Kotlik*, 152 Misc. 802, 803; *Matter of Callahan*, 142 id. 28, 36.) While such a presumed validity has ample foundation in human experience, it is strengthened by public policy which requires that the State safe-

guard an institution which is regarded as the foundation of its existence. Its legality will be maintained up to the point where reason is outraged.

The burden of showing the invalidity of the ceremonial marriage rests with the petitioner who attacks it, even to the point of requiring proof of a negative; that the prior marriage was not dissolved. (*Matter of Meehan, supra; Matter of Tyrrell,* 115 Misc. 714; affd., 198 App. Div. 1001; *Matter of Tompkins,* 207 id. 166.)

In the instant case the petitioner has shown that there was a prior marriage, and that the first husband was alive at the time of the questioned union. It is not enough. There is a failure of proof that there has not been a valid annulment or dissolution of the prior marriage at the time of the disputed remarriage.

The application to revoke letters of administration is denied. Settle decree.