In the Matter of the Estate of ALEXANDER SOKOLOFF, Deceased.

Surrogate's Court, Kings County, February 17, 1938.

*Eugene Ungar,* for the petitioner Tessie S. Hochberg, daughter.

*David R. Cohen,* for Bertha Sokoloff, widow, and Max Sokoloff, son, objectants.

WINGATE, S.   In this proceeding for letters of intestate administration is directly involved the issue of the legitimacy of a recognized son of the decedent born of a union between the latter and his mother which had its inception in a ceremonial marriage solemnized on January 28, 1915, and continued up to the time of the decedent's death.   The pertinent facts are undisputed, and as to the majority thereof have been made the subject of concessions on the record.   The decedent was first married to Annie Cantor on October 6, 1907.   They had one child, who is the present petitioner. In the latter part of 1914, Annie instituted divorce proceedings in Kings county against the decedent.   An interlocutory decree in her favor was entered in the office of the county clerk on January 27, 1915.   On the following day, in New York city, a rabbinical marriage was solemnized between the decedent and Bertha Gurber. On May 15, 1915, a final decree in the divorce action was made by Mr. Justice (now Chief Judge) CRANE.   The decedent and Bertha lived together as man and wife until the date of his death, which

occurred on November 10, 1937. During this period, and on October 21, 1915, a son, Max, was born to them. He has interposed objections to the grant of letters of administration upon the estate to the daughter by decedent's marriage to Annie. The latter has remarried. No modification of the divorce decree was ever made, as contemplated by section 8 of the Domestic Relations Law, permitting the decedent to remarry. The relations between the decedent and Bertha from the date of the solemnization of their marriage in January, 1915, until his death — a period of almost twenty-three years, were the normal relations of husband and wife; he continually held her out as such, they went to various unidentified places together, and he recognized Max as the legitimate offspring of their union.

The question is presented as to whether on this showing it is obligatory or permissible for the court to brand Max with the stigma of bastardy. Involved in this determination, and also raised by the independent objections of Bertha, is the related question of whether she, who for almost a quarter of a century has performed the services and enjoyed the status of the honored and devoted wife of the decedent, must be held to have been living in open adultery or prostitution with him during this entire period.

It is undeniable, as a legal matter, that the ceremony celebrated on January 28, 1915, was ineffective to consummate a marriage between the decedent and Bertha. The prior marriage between the decedent and Annie had not been dissolved by the interlocutory decree of divorce entered on the previous day. (*Pettit* v. *Pettit*, 105 App. Div. 312, 313.) It is equally incontrovertible that in the absence of a modification of the decree of divorce so as to permit remarriage by the defendant therein, no valid marriage could be contracted by him in the State of New York. (*Merrick* v. *Merrick*, 266 N. Y. 120, 122, 123.)

For any one to imagine, however, that the cogency of the true presumptions of law, as distinguished from inferences of fact (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524), of the validity of a long-sustained and publicly-recognized marriage relation and of the legitimacy of acknowledged offspring are so lightly to be overcome, would be seriously to underrate the potency of these basic legal principles.

Their far-reaching effect and the nature and extent of the demonstration requisite for their rebuttal have been made the subject of reiterated judicial utterance through the passing years. " Whereas the cogency of the proof required in this connection has been variously phrased as ' irrefragable ' (*Caujolle* v. *Ferrie*, 23 N. Y. 90, 108) and ' unanswerable ' (*Tracy* v. *Frey*, 95 App. Div. 579,

586), the modern statement is ' that the presumption will not fail unless common sense and reason are outraged by a holding that it abides ' (*Matter of Findlay*, 253 N. Y. 1, 8. See, also, *Matter of Matthews*, 153 id. 443, 447)." (*Matter of Byrnes*, 160 Misc. 474, 476.)

As this court pointed out in *Matter of Smith* (136 Misc. 863, 869): " The practical result is that ' those who assume the fact of illegitimacy have cast upon them the onus of establishing it ' (*Caujolle* v. *Ferrie*, 23 N. Y. 90, 95), they must disprove every reasonable possibility of legitimacy (*Caujolle* v. *Ferrie*, 23 N. Y. 90, 109; *Matter of Biersack*, 96 Misc. 161, 166, 176; affd., 179 App. Div. 916; *Barker* v. *Barker*, 172 id. 244, 246), even to the extent of proving negatives (*Matter of Biersack*, 96 Misc. 161, 178; affd., 179 App. Div. 916; *Matter of Meehan*, 150 id. 681)."

As is said by the court in the last cited case (at p. 684): " It is incumbent upon whoever assails the validity of the marriage and the legitimacy of the children to prove his case by evidence instead of presumptions, even if that involve proof of a negative."

" Improbability alone will not break the cogency of the presumption (*Matter of Findlay*, 253 N. Y. 1, 10), nor will a result of illegitimacy be reached by a balancing of probabilities (*Matter of Findlay*, 253 N. Y. 1, 8; *Van Aernam* v. *Van Aernam*, 1 Barb. Ch. 375, 377; *Matter of Biersack*, 96 Misc. 161, 177; affd., 179 App. Div. 916)." To like effect see *Matter of Bennett* (135 Misc. 486, 497); *Matter of Kotlik* (152 id. 802, 804, 805); *Matter of Krasnicki* (154 id. 771, 772); *Matter of Byrnes* (160 id. 474, 476).

Applying these firmly-established principles to the present case, has the daughter of the first marriage excluded all reasonable probability of Max's legitimacy? The answer must be an emphatic negative. It is true that prior to May 15, 1915, the decedent was incompetent to contract a valid marriage anywhere. After that date, however, it was wholly within his power to validly marry in any place in the world except the State of New York, since the inhibitions of section 8 of the Domestic Relations Law do not invalidate a marriage beyond its borders. (*Moore* v. *Hegeman*, 92 N. Y. 521, 526; *Thorp* v. *Thorp*, 90 id. 602, 605; *Van Voorhis* v. *Brintnall*, 86 id. 18, 32; *Fisher* v. *Fisher*, 250 id. 313, 318.)

It was testified on the hearing that subsequent to the time that the decedent and Bertha solemnized their abortive marriage they went to various places together. It would place no strain on the imagination to suppose that they may have gone to New Jersey or Connecticut or some other State. In any event, there is no indication in the record that they did not. If they did, it was perfectly competent for them on such occasion to have consum-

mated that marriage inhibited only by the local rule of New York State. In the absence of some demonstration indicating the abrogation of the common-law rule of the validity of a marriage by mutual consent, it must be presumed that no ceremony would be required for that purpose, since the common law will be presumed to prevail in another State in the absence of a contrary showing (*Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 496; *Southworth* v. *Morgan*, 205 id. 293, 296; *Carstairs* v. *Spear*, 201 App. Div. 418, 422; *Van Wyk* v. *Realty Traders, Inc.*, 215 id. 254, 256; *Matter of Smith*, 136 Misc. 863, 878), and at common law all that is required for a valid marriage is an agreement to that effect between the parties. (*Gall* v. *Gall*, 114 N. Y. 109, 118.)

Such an agreement will be inferred as soon as the impediment to the validity of the union was removed. In support of this nothing could be added to the lucid and convincing statement of Presiding Justice LAZANSKY while still sitting at Special Term in *Applegate* v. *Applegate* (118 Misc. 359, 362). (See, also, *Matter of Haffner*, 254 N. Y. 238, 242, 243; *Leeds* v. *Joyce*, 202 App. Div. 696, 700; affd., 235 N. Y. 620; *Matter of Wells*, 123 App. Div. 79, 85; affd., 194 N. Y. 548; *Tracy* v. *Frey*, 95 App. Div. 579, 583; *Taylor* v. *Taylor*, 63 id. 231, 234; *Matter of Cherney*, 162 Misc. 764, 767, 768.)

In the absence of a demonstration to the contrary, it must be inferred, in support of the presumptions of legitimacy and of the validity of this marriage, that at some time during the twenty-two years subsequent to May 15, 1915, the decedent and Bertha, in one of their demonstrated trips journeyed the short intervening distance between their home and New Jersey or Connecticut, where, the impediment to their marriage no longer being operative, their continuing intention and desire to be and continue lawfully wedded might be, and was, effectuated.

For the reasons heretofore elaborated, the court determines that Max is the decedent's legitimate son and Bertha his lawful widow, and that letters of administration may issue to either or both, at their election, upon due qualification according to law.

Enter decree on notice in conformity herewith.