In the Matter of the Estate of WARILY BURDAK, Deceased.

Surrogate's Court, New York County, April 4, 1940.

*Theodore E. Wolcott* and *Myer Meltsner*, for the petitioners.

*Joseph A. Cox*, for the public administrator of New York county, respondent.

*Blum & Jolles*, for the Consul General of the Republic of Poland, respondent.

FOLEY, S. This proceeding was brought on by the petitioners Mary S. Burdak and Anna Burdak Pfenning for the revocation of letters of administration issued to the public administrator of the county of New York upon the estate of the decedent. The petitioners alleged that they were respectively the widow and the daughter of the decedent. No ceremonial marriage was asserted to have taken place between the alleged wife and the decedent. She con-

tended that they had entered into a common-law marriage in New York city about the year 1915 and that the copetitioner, Anna B. Pfenning, was born of that marriage in New York city in the year 1916. In opposition to these claims, the public administrator and the Consul General of the Republic of Poland contended that the decedent was married to one Natalia (or Natalja) Burdak in Poland on January 25, 1906; that two children were born of that marriage, of whom one was living at the time of the death of the decedent. It is their further contention that no common-law marriage was ever entered into between the petitioner Mary S. Burdak and the decedent and that he was incapable in law of entering into any such marriage, either common law or ceremonial, because of the fact that his wife Natalia survived at the time of his death and was his lawful widow. A further barrier to the petitioner's status was based upon the charge that she had a husband living at the time of the alleged marriage to the decedent.

Warily Burdak, the decedent, died in the year 1937. He was a veteran of the World war and the moneys in the estate appear to have been derived from benefits granted by the government of the United States through its Veterans' Administration. He was adjudicated an incompetent in 1919 and remained such until his death in 1937.

The issues raised by the pleadings in the proceeding were referred to a referee to take testimony and to report with his opinion. In his report he has found that the decedent entered into a valid marriage with Natalia Burdak in Poland in 1906 and that the marriage was in existence at the date of the death of the decedent. He further held that there was no common-law marriage entered into between Mary S. Burdak, one of the petitioners here, and the decedent and that the decedent had a wife living when the cohabitation started. He held further that Natalia Burdak was his lawful widow.

The report of the referee is confirmed. There are a few minor clerical errors contained in it, which have been corrected by the surrogate in his own handwriting upon the report.

The issues raised by the pleadings were relatively simple. In the course of the trial they have been needlessly confused by the intrusion of technical objections raised by counsel for the petitioners, many of them unfounded in law, as to the reception of proof. For example, the marriage of the decedent to his lawful wife Natalia in Poland was indisputably established by the duly authenticated and certified copy of the original marriage record on file in a public office in Poland. At the close of the reference there was indication in the record that the form of authentication of that document

might have been conceded as proper under the provisions of section 398 of the Civil Practice Act. That doubt existed, however, as to such concession by counsel for the petitioners, was later revealed on the motions upon the confirmation or modification of the report of the referee. Thereupon, the proceeding was reopened by direction of the surrogate (*Matter of Burdak*, N. Y. L. J. March 21, 1940, p. 1286) for the purpose of the submission of proof of authentication required by section 398 of the Civil Practice Act, as to Respondent's Exhibit No. 26, which is the copy of the marriage certificate. It was also reopened for the submission of proof that such instrument was valid under the law of Poland and was entitled to legal recognition in the courts of that country, under the provisions of section 391 of the Civil Practice Act. Whatever doubt existed in the record as to the lawful certification and authentication of the copy of the marriage certificate, and as to whether such certificate was valid under the law of Poland and entitled to legal recognition in its courts, has been entirely dissipated by the testimony taken before the surrogate. Upon this testimony I hold that the authentication and certification of the questioned document now comply fully with the terms of the Civil Practice Act. Moreover, its legal effect under the law of Poland has been clearly established by the testimony of an expert in Polish law. He was a practicing attorney in that country for many years and a justice of one of the highest courts of Warsaw. Upon the testimony taken before the referee and the supplemental testimony taken by the surrogate, the fact of the marriage of the decedent to Natalia Burdak has been proved. In addition, there was testimony submitted to the referee taken on the depositions of witnesses in Poland which, independent of the marriage certificate itself, furnishes proof of the decedent's marriage in Poland.

Under the well-established rule in our State, any subsequent attempted marriage by a person at a time when his spouse is living, is void. (Dom. Rel. Law, § 6; *Stokes* v. *Stokes*, 198 N. Y. 301; *McCullen* v. *McCullen*, 162 App. Div. 599; *Earle* v. *Earle*, 141 id. 611; *Matter of Bruington*, 160 Misc. 34.)

In view of this conclusion it is unnecessary to discuss in detail the evidence of the opposing parties upon the question of whether a common-law marriage was entered into between the petitioner, Mary S. Burdak, and the decedent. It is sufficient to say that the referee's conclusion that no common-law marriage was entered into is convincingly established by the evidence. Even if the decedent was legally capable of entering into a marriage (which he was not) there is one document in evidence which destroys any pretense that the requirements of a valid common-law marriage between

the parties ever existed. That document is in the form of a questionnaire submitted to the claimant, Mary S. Burdak, by a field agent of the United States Veterans' Administration with her answers.

It is an essential element of a common-law marriage that there must be an agreement between the parties to take each other as husband and wife in a permanent union. (*Matter of Pratt*, 233 App. Div. 200; *Matter of Haffner*, 254 N. Y. 238; *Sprague* v. *Sprague*, 225 App. Div. 699; *Graham* v. *Graham*, 211 id. 580; *Smith* v. *Smith*, 194 id. 543; *Matter of Auerbach*, 208 id. 163; Dom. Rel. Law, § 10.) The agreement must be a mutual agreement *per verba de praesenti*. If there is no such agreement, there can be no valid marriage. If consent is lacking, nothing can take the place of it. " This consent is of itself sufficient, *but for it there is no substitute or equivalent.*" (Per KELLY, P. J., in *Graham* v. *Graham*, 211 App. Div. 580, 583.)

When, under these legal tests, the damaging admissions of the petitioner Mary S. Burdak contained in her answers to the questionnaire of the Veterans' Administration in 1920 are examined, they completely nullify even the possibility of the existence of a valid common-law marriage. They also demonstrate that not only was the decedent disqualified from marrying because he had a wife living at the time of his relations with Mary S. Burdak, but equally important that she was disqualified from marrying because she had a husband living. The purpose of the questionnaire was to ascertain whether she was entitled to benefits as the wife of a war veteran. The questions as drawn probed deeply into the arrangements and understanding of the alleged spouses.

One question put to her was, " What had been said between you and the claimant concerning a marriage before you began to live with him? She made answer, " He did not say anything; he said he wants to live with me. I told him I could not marry him because I had a husband." She was further asked, " Before, and at the commencement of your living with him, what agreement, understanding or arrangement existed between you as to *how long* you were to live together?" Her answer was, " We had no agreement between us; it was understood that we were to live together always; he did say I will never marry and will live with you always and the next time he said he wanted to marry me and I said no because I had a husband and dont know where he is." She further said, " I had no agreement with him [the decedent] to marry him; but just to live with him because I was afraid to marry him on account of my husband living although he was anxious to marry me." Again she was asked, " Do you feel that you can leave each other at any time without legal proceedings?" And she answered, " Yes." She stated that she had never started any divorce proceeding against

her former husband, and that the reason why there was no wedding between herself and the decedent was, " Because my husband was living and I was not divorced from him so I was afraid to marry Burdak." She also stated that she had never heard of any divorce proceeding brought against her by her former husband.

There are other admissions which are equally destructive of the claims now asserted by her. The petitioner certified over her own signature that she had read the answers to the various questions and that they were correctly stated. She concluded in this form of verification, " I do not desire to alter any of them; and that all of the said answers are true and correct." The contents of the entire deposition were thus made under the sanctity of an oath administered to her as certified by the field examiner. In this connection the surrogate is in accord with the conclusion of the referee that the subsequent explanation of the claimant contained in her testimony and her attempt to evade the damaging effect of her answers to the questionaire were unconvincing. As the trier of the facts the referee has rejected her testimony in which she denied that she gave such answers. His opportunity for the observation of the witness upon the stand strongly supports his conclusion of her lack of veracity. " To the sophistication and sagacity of the trial judge the law confides the duty of appraisal." (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.) " Where truth hangs upon the credibility of witnesses, courts should consider the advantages of the trial court who has seen and heard the witnesses." (*Smith* v. *Smith*, 273 N. Y. 380, 383.) These tests apply with equal force to the determination of an experienced referee. (*Nottingham* v. *Nottingham*, *No. 1*, 209 App. Div. 459, 461; *Matter of Kramer*, 172 Misc. 598, 605.)

The application for the revocation of letters of administration is, accordingly, denied. The surrogate holds upon the evidence that the decedent was survived, as his sole distributees and next of kin, by his wife, Natalia Burdak, and by his son, Bazyli Burdak. He specifically finds that the petitioner Mary S. Burdak never entered into a common-law marriage with the decedent. He further finds that the copetitioner, Anna Burdak Pfenning, the alleged daughter of the decedent, was not born in lawful wedlock and, therefore, is not within the class of statutory distributees. (*Matter of Bruington*, 160 Misc. 34; *Bell* v. *Terry & Tench Co.*, 177 App. Div. 123; *Matter of Crook*, 140 Misc. 721; *Matter of Thomann*, 144 id. 497.)

Tax costs. Submit decree on notice denying the application accordingly.