In the Matter of the Estate of CHARLES B. RICHMOND, Deceased.

Surrogate's Court, New York County, August 15, 1942.

*Joseph A. Cox*, for James F. Egan, Public Administrator of the County of New York, petitioner.

*Gettinger & Gettinger* [*Homer I. Harris* of counsel], for Julia H. Richmond and William H. Richmond, respondents.

FOLEY, S. In this accounting proceeding of the public administrator, Julia H. Richmond, claiming to be the lawful widow of the decedent, and William H. Richmond claiming to be his son, have filed objections to the account which put in issue their status as the statutory distributees of the decedent. The public administrator, in answer to their claims, asserts that they are not, respectively, the lawful widow and son. In the account, the public

administrator lists the distributees of the decedent as unknown. No near relatives or statutory distributees have been discovered by him. He contends that the decedent entered into a valid marriage with Josie K. Richmond and that the alleged second marriage of the decedent to the petitioner, Julia H. Richmond, is void.

The situation is further complicated by the contention of the objectants that Josie K. Richmond, the bride by the first marriage, was a half-sister of the decedent, and that the first marriage was incestuous and void.

Oral and documentary evidence was submitted upon the trial. It has been conclusively proved that the decedent, Charles B. Richmond, and Josie K. Richmond were married in New York city on June 8, 1878. The original certificate of marriage by the clergyman who performed the ceremony was found in the personal effects and papers of the decedent immediately after his death. In confirmation of it, there is the official certification of the department of health that a formal return of the marriage was filed in its bureau of vital statistics shortly after the performance of the ceremony. The groom's age was given as twenty-one, although his other authentic declarations would seem to show that he was sixteen years old at the time, his birth having been stated by him to have occurred in the year 1862. In the information supplied by the parties to the marriage, which appears in the records of the health department, the name of the father of the bride and groom, John Richmond, is identical. The names of the mothers are different — that of the groom is given as Luisa Hix and that of the bride as Lizzie Kinear. Reliance is placed upon these statements that the bride is the half-sister of the decedent. Further reliance is placed upon certain letters written by Josie K. Richmond, the wife, to her husband, in which she used the salutation, " My dear brother " and the closing phrase, " your loving sister."

These inferences, however, are nullified by other evidence in the case which, in the opinion of the surrogate, establishes that Josie was not the half-sister of the decedent. It is found in the declarations of the decedent himself, and particularly in a letter dated August 29, 1927, to the chief of police of London, England, which was written shortly after the death of his conceded sister Lulu or Louise Richmond, who died on June 29, 1927, in London. In it he stated that " Josie Richmond is not related to me or My Sister Lulu Richmond." In it is also given the probable explanation, which the surrogate accepts, as to the use of the word " sister," as applied by Josie to her relationship with the decedent. Lulu and Josie had gone to England many years before. They per-

formed on the stage and continued to play in a vaudeville act under the name of the " Richmond Sisters." Further confirmation of the sense in which Josie K. Richmond used the word " sister " is found in a note which she wrote to the decedent after the death of his real sister Lulu, in which she said " You will have a true and loving sister in me for the sake of my Darling beloved Lulu."

There is also strongly persuasive documentary evidence in the case establishing that Josie was not the sister or half-sister of the decedent. There was a written declaration by his real sister Lulu in a letter addressed to the decedent, dated October 22, 1913, and found in his personal effects, in which she states clearly that she was the only living relation of the decedent in this world. At that time Lulu and Josie were living together and they continued so to live until Lulu's death in 1927. The census records of 1870 have been received in evidence. They show the members of the family of the decedent and his parents and include the name of his sister, Lulu. The names of other children are given. The name of Josie is significantly absent.

The surrogate accordingly holds that Josie K. Richmond, who married the decedent on June 8, 1878, was not his half-sister or otherwise related by blood to him in such manner as to make void their marriage as incestuous under the law of New York.

Consideration must now be given to the alleged second marriage of Charles B. Richmond to Julia H. Richmond, one of the claimants here. There is no direct evidence as to whether Josie and the decedent had resided together for any substantial period of time after their marriage in 1878. There was never any issue of this marriage. There is evidence that they separated and that she went to England. There is no evidence that he showed any interest in her financial support. On the contrary, her career upon the stage showed she earned her own living in that country. About the year 1900, Richmond met the woman who now asserts her rights in this proceeding as his lawful widow. She lived in New York city. They appeared to have kept company. They left New York city for the West in 1904. It is claimed that they were married at St. Joseph, Michigan, in that year. No ceremonial marriage, however, has been proved. They moved to Chicago and three children were born to them. The birth certificates describe their father and mother as Charles B. and Julia H. Richmond. The decedent appears to have abandoned the mother of these children and she returned to New York. He subsequently came here some time between 1912 and 1916. He never resumed living with her. Two of the children subsequently died and the surviving son, William, is one of the claimants here.

The surrogate finds upon the evidence that if the impediment of the prior marriage and the existence of the wife by that ceremony have been removed by a presumed divorce or annulment between them, the evidence justifies a finding that the decedent and Julia H. Richmond entered into a valid common law marriage in 1904. Upon the question of the existence of the impediment to a valid marriage by the decedent, the surrogate further applies the presumption of the legality of the second marriage and the inference that the prior marriage had been dissolved prior to such second marriage. The burden of establishing the invalidity of a marriage is upon those who assert that it is void. (*Matter of Meehan*, 150 App. Div. 681; *Matter of Dugro*, 261 id. 236; affd., 287 N. Y. 595.)

There is in evidence certain written declarations in the form of two letters written by the decedent's sister Lulu in the year 1914. Both were addressed to him as " My dear brother." In the first one, dated March 2, 1914, she wrote: " I am herewith sending you Josie's declaration sworn to today, in the office of the Commissioner for Oaths & duly witnessed by me. This is just as though you had the divorce papers themselves. Dear Boy I do hope this will end all your troubles which have never existed since May 1879 a matter of thirteen years." She obviously intended to write " thirty years." The second significant letter is dated March 22, 1914. In it she stated that she had received a letter from him, apparently dated March 11, 1914. She continued: " I am surprised to hear that the document I sent you was not sufficient to prove your case. It was sworn to and witnessed by a Commissioner for Oathes (that is what they call a " Notary " in this Country). I will go to another solicitor tomorrow and have another declaration drawn up and if that is not sufficient, I do not know what American Law can possibly want. I will do as you suggest, and write to Judge Donohue but I do not think he is alive it is thirty Five years since, Josie got the Divorce, * * *." While a search of the records of the Supreme Court of New York county has not disclosed the existence of any divorce here, there is the strong possibility from this declaration that a divorce might have been obtained in some other jurisdiction.

The rules applicable to a situation where the second marriage will be sustained under the presumption of its validity, particularly where there is issue of such marriage, as in the present case, were restated by Presiding Justice Martin in *Matter of Dugro (supra)*. He applied to the facts in that case the similar rules enunciated in *Matter of Meehan (supra)*. This line of cases is to be distinguished from other decisions in which the alleged marriage was clearly

void because of the continued existence of the prior marriage, the known whereabouts of the first spouse and absolute proof that no divorce was ever entered into between the parties to the first marriage. In such cases the second relationship is clearly meretricious and even the birth of issue cannot lend sanctity to the alleged marriage. These cases are typified by my decisions in *Matter of Bruington* (160 Misc. 34); *Matter of Burdak* (173 Misc. 839; affd., 262 App. Div. 1000) and by the decisions in *McCullen* v. *McCullen* (162 App. Div. 599) and *Earle* v. *Earle* (141 App. Div. 611). (See also Dom. Rel. Law, § 6.)

Reliance is placed by the public administrator upon the fact that in 1931 the decedent went to England after the death of Josie K. Richmond. She died on July 19, 1930. He procured the issuance of letters of administration to himself as her lawful husband and collected the entire estate as her sole distributee. I do not regard this action as conclusive as to the continuance of his marriage to Josie or as negativing the evidence which strongly points to a previous dissolution of the marriage between them. His sister Lulu, who would have known the facts, was then dead and apparently, there was no one in England who could refute his pretensions. Her estate approximated fifteen hundred dollars in value. It is reasonably inferable from his conduct in connection with the abandonment of his second wife and his failure to support his children that he was of a disposition which would have suppressed any conscientious or honest disclosure of the termination of his first marriage.

Under these authorities and the applicable principles, the surrogate finds that the marriage of the decedent to Josie K. Richmond must be presumed to have been dissolved prior to the union entered into by him with Julia H. Richmond in 1904. He further finds that Julia H. Richmond is the lawful widow of the decedent and William H. Richmond his lawful son by that marriage. They are determined to be the statutory distributees of the decedent.

Submit decree on notice settling the account and directing distribution of the balance of the estate accordingly.