Anthony J. Di G-iovanna, J.
This is an action for separation based upon a charge that the -defendant treated the plaintiff in a cruel and inhuman manner on specific occasions and also in a continuous course of conduct; the second cause of action is based upon a charge that the defendant failed to provide for the support and maintenance of the plaintiff and the issue of the marriage. In addition to the denials, the defendant by amended answer set forth a counterclaim seeking a judgment declaring the nullity of the marriage on the ground that the plaintiff had a previous husband living at the time of her marriage to the defendant, which marriage had not been dissolved by any decree of any court of competent jurisdiction. There is one child involved in this matrimonial situation aged about 11 years.
Although the parties were married on June 11, 1954, it is admitted by both that they lived together without the benefit of legal ceremony for several years before the marriage and that the child was born out of wedlock. While the child became legitimatized by reason of the provisions of section 24 of the Domestic Relations Law by the subsequent marriage of his parents, his status has now been threatened by the counterclaim for annulment. If the counterclaim is sustained then his status reverts to that of illegitimate and this court would be powerless under section 1135 of the Civil Practice Act to declare him legitimate because he is not <( a child of the marriage ”, as defined in subdivision 1.
Consequently the annulment counterclaim requires even greater scrutiny under the circumstances.
The defendant relies upon Exhibit “ B ”, which is a certified copy of a marriage certificate issued in New York County, wherein it is stated that the plaintiff married one William F. Horstkotter. The plaintiff, while admitting she had once been married to him, testified that she was under the impression that she had been divorced from him because in 1945 her then husband told her that he had instituted proceedings for divorce. It is upon this record and defendant’s Exhibit “ C ”, a record of the *612 Department of Health that it has no report of Mr. Horstkotter’s death, that the defendant seeks this annulment. It is apparently his contention that a presumption of continuance of marriage arises from these documents and that this presumption is sufficient to sustain his claim that the second marriage was invalid. The defendant overlooks the fact that the certificate of marriage of the parties herein likewise carries with it a presumption of continuance of marriage and of legitimacy of marriage.
It is provided in section 372 of the Civil Practice Act: “ An original certificate of a marriage, within the state, made by the minister or magistrate by whom it was solemnized; the original entry thereof made, pursuant to law, in the office of the clerk of a city or a town within the state; or a copy of the certificate, or of the entry, duly certified, is presumptive evidence of the marriage. ’ ’ However, it must Toe made clear that such certificate is only presumptive evidence that the marriage took place but does not constitute proof that the parties to the former marriage were competent to marry in the first instance; nor does the certificate of the Department of Health that it has no record of the death of the first husband constitute proof that he was alive at the time of the second marriage.
In Appelbaum v. Appelbaum (9 Misc 2d 677) the charge was made that the wife married the plaintiff when she was validly married to another. In an action to annul the marriage on the ground that the defendant’s spouse was living at the time of the marriage of the parties, the court said (p. 679): “ To succeed here, plaintiff must however establish by a fair preponderance of the credible evidence that the defendant was not free to marry him due to her subsisting marriage to Goldman, then living. Having asserted the invalidity of the present marital status, plaintiff has the onus of proving it (Matter of Callahan, 142 Misc. 28, affd. 236 App. Div. 814, affd. 262 N. Y. 524). True, the plaintiff has established that Goldman was then alive and he has also offered into evidence a certificate of marriage between defendant and said Goldman which is presumptive proof of the validity of such prior marriage (Civ. Prac. Act, § 372); but this presumption is of little value since it cannot be determined from the evidence whether Goldman’s wife was living or dead when he entered into the ceremonial marriage with defendant (Matter of Callahan, supra). * * * In these circumstances plaintiff has failed to satisfy the court that the present marital status is invalid. The court must extend itself to uphold the validity of the marriage under attack and indulge in every presumption in favor of such validity (Layton v. Layton, 189 Misc. 974; Matter of Dugro, 261 App. Div. 236, affd. 287 N. Y. 595), *613 particularly where there is issue of the marriage whose legitimacy is thus established and reaffirmed (Matter of Conklin v. Tuttle, 234 App. Div. 1, affd. 260 N. Y. 663). The mere exhibition of a certificate of a prior marriage, though presumptive proof thereof, and the existence of the person named in the certificate who is already married, do not overcome such presumption of validity (Matter of Bilotta, 110 N. Y. S. 2d 331).”
As is said in New York Law of Domestic Relations by Gross-man (§ 69, pp. 43-44):
“ § 69. Proof necessary to overcome presumption of validity.
“ An examination of the cases dealing with this subject shows that the presumption of the validity of a marriage which is attacked is one of the strongest known to law. It is a presumption made in the interests of decency and morality (Matter of Simms, 105 Mise 118,172 N Y Supp 670). The presumption of marriage from cohabitation does not assume that the marriage became effective and valid at any particular time or place or in any particular manner. The presumption means solely that a legal marriage existed (Matter of Hinman, 147 App Div 452, 131 NY Supp 861).
‘ ‘ Before a relationship, which is apparently matrimonial, will be held non-existent, the courts demand that proof be given which is uncontrovertible (Campbell v Campbell, 164 Misc 647, 1 N Y Supp 2d 619; Meekins v Kinsella, 152 App Div 32, 136 N Y Supp 806; Matter of Brush, 25 App Div 610, 49 N Y Supp 803; Brewer v Brewer, 24 N Y Supp 2d 6, affd 259 App Div 996, 21 N Y Supp 2d 154; Denton v Denton, 179 Misc 681, 37 N Y Supp 2d 704; Matter of Richmond, 178 Misc 1018, 37 N Y Supp 2d 19; Newins v Newins, 13 N Y Supp 2d 377; Matter of Van Valkenberg, 184 Misc 949, 54 N Y Supp 2d 897). It is insufficient to prove merely a prior marriage. The legality of the second marriage will be maintained up to the point where reason is outraged (Matter of Meehan, 150 App Div 681, 135 N Y Supp 723; Matter of Gropen, 162 Misc 346, 294 N Y Supp 558; Hynes v McDermott, 91 N Y 451, 43 Am Rep 677).”
Again as is said in New York Law of Domestic Relations by Grossman (§ 70, pp. 44-45):
“ § 70. Evidence necessary to prove existence of valid first marriage.
“ The validity of the first marriage must be proved by evidence instead of presumptions, even if that involves proof of a negative (Matter of Meehan, 150 App Div 681, 135 N Y Supp 723). By proof, of a negative, it has been held, is meant proof by the one attacking the second marriage that, 1. the parties *614 to the first marriage were competent to marry; 2. at the time of the second marriaige, the first had not been dissolved or annulled; 3. at the time of the second marriage, both prior spouses were alive; 4. the prior spouse had not been imprisoned for life; 5. the prior spouse had not absented himself for five successive years last past, before the second marriage was contracted, without being known to the contracting spouse to be living; 6. after the second marriage, the twice married spouse had knowledge, or facts sufficient to charge him with knowledge, that his prior spouse was still living
Section 71 (p. 46) reads as follows:
“ § 71. Decision must favor validity.
‘ ‘ Where either validity or invalidity of a marriage is a matter of choice for the court, it must decide in favor of validity, although to do so leads to an inference that a party is guilty of perjury (In re Smidt’s Will, 162 Misc 596, 295 N Y Supp 227); or that a spouse not proven to have died is dead (Smith v Smith, 194 App Div 543, 185 N Y Supp 558, see People v Kay, 141 Misc 574, 252 N Y Supp 518); or that a prior spouse was himself under a disability (Matter of Biersack, 96 Misc 161, 159 N Y Supp 519).”
And section 72 reads as follows:
“ § 72. Burden of proof.
“ Obviously, where the court indulges in a presumption as strong as that stated ante, there is no need on him who alleges a marriage to be valid to sustain the allegation. Rather, the onus of proving the invalidity of the status rests on him who asserts it (Matter of Gropen, 162 Misc 346, 294 N Y Supp 558; Price v Tompkins, 108 Misc 263,177 N Y Supp 548; Matter of Meehan, 150 App Div 681, 135 N Y Supp 723; Clayton v Wardell, 4 N Y 230; Cavanaugh v Valentine, 181 Misc 48, 41 N Y Supp 2d 896; Chayka v Chayka, 179 Misc 979, 41 N Y Supp 2d 487; Matter of Richmond, 178 Misc 1018, 37 N Y Supp 2d 19; Matter of Tyrell, 115 Misc 714, 185 N Y Supp 762; Matter of Callahan, 142 Misc 28, affd 236 App Div 814, affd 262 N Y 524, 188 N E 48; Matter of Sokoloff, 166 Misc 403, 2 N Y Supp 2d 602; Caujolle v Ferrie, 23 N Y 90; Barker v Barker, 172 App Div 244, 158 N Y Supp 413).”
The foregoing authorities indicate the validity of the marriage between the parties. The defendant’s proof has fallen short of the standards required in such an action as is set forth in his counterclaim. Under the circumstances the court finds in favor of the plaintiff on the counterclaim for annulment and dismisses the counterclaim upon the merits. The legitimacy of *615 the child, therefore, is no longer an issue by virtue of section 24 of the Domestic Relations Law.
As far as the separation action is concerned, the court finds that the defendant has treated the plaintiff in a cruel and inhuman manner. He has on numerous occasions struck her without any just cause or provocation. Defendant himself admitted many arguments and claimed that it was the plaintiff who struck him. But after hearing all of the testimony the court is convinced that the defendant has a temper which flares easily and that he struck the plaintiff.
The parties reside under the same roof although not in the same apartment. They live in a house owned by the defendant wherein he conducts a rooming house. Following an altercation in January, 1959 the defendant removed himself from the plaintiff’s rooms and lives in a separate room in the house. He started to give her $15 a week in March, 1959, forcing the plaintiff to take a part-time job. Since then he has given her inadequate support for her care and the support of the infant child. As a matter of fact, on October 26, 1959 a decision was made and an order thereafter entered awarding to the plaintiff the sum of $50 per week as temporary alimony, together with counsel fees. He failed to adhere to that order and consequently fell into arrears. At the time of the trial, the plaintiff claimed the arrears to be about $1,200 or $1,300. The defendant disputed the amount but both sides agreed and struck a figure of $500 as the amount of arrears for which provision can be made and a judgment to be entered herein.
A motion was made because of the defaults of the defendant, for the appointment of a receiver, or, in the alternative, for a money judgment for arrears. This motion was denied without prejudice to a renewal upon the trial.
Following a motion to amend the answer to include the counterclaim for annulment, the plaintiff was given leave to apply to the trial court for an additional counsel fee to enable her to defend against the counterclaim. A motion was necessitated in the course of the proceedings herein, to have the defendant post security. The court noted in its decision, dated December 29, 1959, that “ The papers are barren of any substantial facts indicating the defendant’s intent to either dispose of his property with an intent to escape temporary alimony payments, or a purpose to flee the jurisdiction from New York and/or a course of conduct which would require the security for alimony payments.” During the course of this trial it was testified by the defendant that a few days before the trial actually started, he caused his property to be transferred'to his *616 sister. The defendant admits that all business that he has ever conducted has been on a cash basis and never by means of bank accounts. He testified .that he borrowed as much as $9,000 or $10,000 in cash from his sister over a period of time and that he now gave the deeds to secure the repayment of the loans. His sister was not called as a witness. The court must take a dim view of the motives of the defendant, even though the defendant and his attorney stated in open court that the property would be immediately retransferred to the defendant. The property had been tied up by a lis penclens filed by the plaintiff in another action concerning the ownership of the property. Nevertheless the attempt by the defendant to dispose of his property by deeding it to his sister must indeed be looked upon with suspicion.
Consequently the court awards to the plaintiff the sum of $45 per week as support for herself and the infant child. In addition thereto, the defendant is directed to pay to the plaintiff the sum of $750 additional counsel fees within 20 days after entry of the judgment herein and service of a copy thereof upon the defendant or his attorney. The defendant is further directed to pay to the plaintiff the sum of $500 arrears but may make such payments by paying the sum of $10 on account of such arrears in addition to current alimony. In addition thereto, the plaintiff may enter a money judgment for said arrears.
The plaintiff is appointed the receiver in sequestration of the defendant’s property with power to bring such actions as may be necessary to avoid the transfer of the property. The property shall be held by the plaintiff as security for the payments to be made by the defendant.
Custody of the infant child is awarded to the plaintiff subject to reasonable rights of visitation to be fixed in the judgment.
The foregoing constitute all of the findings of fact and conclusions of law pursuant to the provisions of sections 439 and 440 of the Civil Practice Act, the parties having waived the right to submit findings of fact and conclusions of law. Settle judgment on notice.